TIMOTHY W. LOOSE, SBN 241037
   tloose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California  90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Attorneys for Defendant
KIMBERLY-CLARK CORPORATION

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLISON BARTON, individually, and on behalf of others similarly situated,<br><br>       Plaintiff,<br><br>  v.<br><br>KIMBERLY-CLARK CORPORATION,<br><br>       Defendant. | CASE NO. 3:24-cv-1337-GPC-KSC<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  November 22, 2024<br>Time:  1:30 p.m.<br>Courtroom:  2D<br>Judge:  Hon. Gonzalo P. Curiel |

Gibson, Dunn &
Crutcher LLP

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant Kimberly-Clark Corporation hereby moves to dismiss Plaintiff Allison Barton's First Amended Complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). This motion is noticed for November 22, 2024, before the Honorable Gonzalo P. Curiel, United States District Court for the Southern District of California, Courtroom 2D, 221 West Broadway, San Diego, CA 92101.

The motion is based on this notice and motion, the supporting memorandum of points and authorities, all pleadings and documents on file in this matter, and such oral or written evidence or argument as may be presented in connection with this motion.

DATED: October 7, 2024                 Respectfully submitted,


                                       GIBSON, DUNN & CRUTCHER LLP


                                       By: */s/ Timothy W. Loose*

                                           Timothy W. Loose

                                       Attorneys for Defendant KIMBERLY-CLARK CORPORATION

# TABLE OF CONTENTS

**Pages**

INTRODUCTION ................................................................................................... 1

BACKGROUND ................................................................................................... 2

I.    Kimberly-Clark Corporation's U by KOTEX Tampons. .......................... 2

II.   Plaintiff Brings This Action on the Heels of a Research Article
      About Tampons in General. ..................................................................... 3

III.  The FDA's Ongoing Oversight of Tampons. ............................................ 5

ARGUMENT ......................................................................................................... 6

I.    Plaintiff's Claims Should Be Dismissed Because They Intrude On
      The FDA's Role. ....................................................................................... 6

      A.   Plaintiff's Claims are Preempted. ................................................... 6

      B.   Alternatively, Plaintiff's Claims Should Be Dismissed or
           Stayed Because the FDA Has Primary Jurisdiction. ....................... 8

II.   Plaintiff Lacks Statutory Standing. ........................................................ 11

III.  Plaintiff Fails to Allege She Was Misled or Deceived. ........................... 13

      A.   Plaintiff Fails to Plausibly Allege the Products She Bought
           Contain Unsafe Amounts of Lead. ................................................. 14

      B.   Plaintiff Fails to Allege an Actionable Misrepresentation. ............ 17

      C.   Plaintiff Fails to Allege an Actionable Material Omission. ............ 18

      D.   Plaintiff Fails to Allege the Unfair and Unlawful Prongs of a
           UCL Claim. .................................................................................... 19

IV.   Plaintiff's Equitable Claims Should Be Dismissed. ............................... 20

      A.   Plaintiff's Equitable Claims Are Improper Because She Has
           An Adequate Remedy at Law. ......................................................... 20

      B.   Plaintiff Lacks Article III Standing to Pursue Injunctive
           Relief. ............................................................................................. 21

V.    Plaintiff's UCL Claim Should Be Dismissed For Failing to Satisfy
      Proposition 65's Notice Requirement. .................................................... 21

CONCLUSION ................................................................................................... 22

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Backus v. Gen. Mills, Inc.*,
122 F. Supp. 3d 909 (N.D. Cal. 2015) ................................................................. 10

*In re Bang Energy Drink Mktg. Litig.*,
2020 WL 4458916 (N.D. Cal. Feb. 6, 2020) ....................................................... 14

*Boysen v. Walgreen Co.*,
2012 WL 2953069 (N.D. Cal., July 19, 2012) ............................................... 12, 13

*Bruno v. BlueTriton Bands, Inc.*,
2024 WL 2794098 (C.D. Cal. May 6, 2024) .......................................................... 8

*Choi v. Kimberly-Clark Worldwide, Inc.*,
2019 WL 4894120 (C.D. Cal. Aug. 28, 2019) ...................................................... 8

*Clark v. Time Warner Cable*,
523 F.3d 1110 (9th Cir. 2008) ..................................................................... 8, 9, 10

*Colette v. CV Sciences, Inc.*,
2020 WL 2739861 (C.D. Cal. May 22, 2020) ...................................................... 11

*Corbett v. Pharmacare U.S., Inc.*,
544 F. Supp. 3d 996 (S.D. Cal. 2021) ................................................................. 13

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) .............................................................................. 21

*Davidson v. Sprout Foods, Inc.*,
106 F.4th 842 (9th Cir. 2024) ........................................................................ 13, 16

*Dickson v. Dexcom, Inc.*,
2024 WL 3417392 (W.D. La. July 15, 2024) ......................................................... 7

*Fernandez v. Atkins Nutritionals, Inc.*,
2018 WL 280028 (S.D. Cal. Jan. 3, 2018) ........................................................... 10

*Grausz v. Hershey Co.*,
713 F. Supp. 3d 818 (S.D. Cal. 2024) ............................................................ 16, 18

*Gusman v. Comcast Corp.*,
2014 WL 2115472 (S.D. Cal. May 21, 2014) ...................................................... 11

*Gutierrez v. Johnson & Johnson Consumer, Inc.*,
2020 WL 6106813 (S.D. Cal. April 27, 2020) ..................................................... 22

*Guzman v. Polaris Indus. Inc.*,
49 F.4th 1308 (9th Cir. 2022), *cert. denied sub nom. Polaris Indus.
Inc. v. Albright*, 143 S. Ct. 2612 (2023) ............................................................. 20

iii

Gibson, Dunn &
Crutcher LLP

*Harris v. R.J. Reynolds Vapor Co.*,
   2016 WL 6246415 (N.D. Cal. Sept. 30, 2016)......................................................................22

*Hayden v. Bob's Red Mill Nat. Foods, Inc.*,
   2024 WL 1643696 (N.D. Cal. Apr. 16, 2024).............................................................17, 19

*Herrington v. Johnson & Johnson Consumer Cos.*,
   2010 WL 3448531 (N.D. Cal. Sept. 1, 2010).............................................................11, 13

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018) ............................................................................18, 19, 20

*Kenney v. Fruit of the Earth, Inc.*,
   2023 WL 3565076 (S.D. Cal. Apr. 3, 2023) ....................................................................20

*Krystofiak v. BellRing Brands, Inc.*,
   2024 WL 301201 (N.D. Cal. June 14, 2024).............................................................16, 17

*Lowe v. Edgewell Pers. Care Co.*,
   2024 WL 150758 (N.D. Cal. Jan. 12, 2024)....................................................................14

*McGee v. S-L Snacks Nat'l*,
   982 F.3d 700 (9th Cir. 2020) .............................................................................11, 12

*Naimi v. Starbucks Corp.*,
   798 F. App'x 67 (9th Cir. 2019) .....................................................................................12

*Papike v. Tambrands Inc.*,
   107 F.3d 737 (9th Cir. 1997) ...............................................................................5, 8, 9

*Paradowski v. Champion Petfoods USA, Inc.*,
   2023 WL 3829559 (2d Cir. June 6, 2023)........................................................................6

*Pels v. Keurig Dr. Pepper, Inc.*,
   2019 WL 5813422 (N.D. Cal. Nov. 7, 2019)..........................................................11, 12

*Perez v. Nidek Co.*,
   711 F.3d 1109 (9th Cir. 2013) ...........................................................................................7

*In re Plum Baby Food Litig.*,
   2024 WL 1354447 (N.D. Cal. Mar. 28, 2024) ........................................................13, 19

*In re Plum Baby Food Litig.*,
   637 F. Supp. 3d 210 (D.N.J. 2022)...........................................................12, 17, 18

*Prescott v. Nestle USA, Inc.*,
   2020 WL 3035798 (N.D. Cal. June 4, 2020)...................................................................21

*Renn v. Otay Lakes Brewery, LLC*,
   2024 WL 331616 (S.D. Cal. Jan. 29, 2024) ............................................................20, 21

*Riegel v. Medtronic, Inc.*,
   552 U.S. 312 (2008)..................................................................................................5, 7

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM
CASE NO. 3:24-CV-1337-GPC-KSC

*Rodriguez v. Equal Exch., Inc.*,
   2024 WL 1421971 (S.D. Cal. Mar. 31, 2024) .................................. 15, 17, 18, 20, 22

*Rodriguez v. Mondelez Glob. LLC*,
   703 F. Supp. 3d 1191 (S.D. Cal. 2023) ................................................ 16, 19

*Sanchez v. Nurture, Inc.*,
   626 F. Supp. 3d 1107 (N.D. Cal. 2022) ....................................................... 11

*Scheibe v. Performance Enhancing Supplements, LLC*,
   2023 WL 5444644 (S.D. Cal. Aug. 23, 2023) .......................................... 20

*Sharma v. Volkswagen AG*,
   524 F. Supp. 3d 891 (N.D. Cal. 2021) ........................................................ 21

*Shay v. Apple Inc.*,
   2021 WL 1733385 (S.D. Cal. May 3, 2021) (Curiel, J.) ......................... 20, 21

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ....................................................................... 20

*Swearingen v. Yucatan Foods, L.P.*,
   59 F. Supp. 3d 961 (N.D. Cal. 2014) ............................................................ 8

*Thomas v. Costco Wholesale Corp.*,
   2014 WL 5872808 (N.D. Cal. Nov. 12, 2014) ........................................... 10

*In re Trader Joe's Co. Dark Chocolate Litig.*,
   2024 WL 1319725 (S.D. Cal. Mar. 27, 2024) ................................. 16, 18, 19

*Trammel v. KLN Enters., Inc.*,
   2024 WL 4194794 (S.D. Cal. Sept. 12, 2024) ........................................... 14

*Wallace v. ConAgra Foods, Inc.*,
   747 F.3d 1025 (8th Cir. 2014) ....................................................... 12, 14, 15

*Williams v. Gerber Prod. Co.*,
   552 F.3d 934 (9th Cir. 2008) ....................................................................... 13

*Wright v. Or. Metallurgical Corp.*,
   360 F.3d 1090 (9th Cir. 2004) ..................................................................... 15

**Statutes**

21 U.S.C. § 360c ................................................................................................ 10

21 U.S.C. § 360k ....................................................................................... 1, 5, 7, 8

21 U.S.C. § 371 ................................................................................................. 10

**Regulations**

21 C.F.R. § 801.430 ..................................................................................... 5, 7, 10

21 C.F.R. § 808.1 ....................................................................................... 1, 5, 7, 8

21 C.F.R. § 884.5460 ................................................................................................. 5, 10

21 C.F.R. § 884.5470 ................................................................................................. 5, 10

Gibson, Dunn & Crutcher LLP

## INTRODUCTION

For decades, millions of women have turned to Defendant Kimberly-Clark Corporation's U by KOTEX Click® tampons to provide effective and trusted period protection. Plaintiff Allison Barton is among this group of women, and although she does not identify any issues with the performance of the tampons, and does not claim to have experienced any physical injury from using them, she has brought this suit claiming that one study found that tiny traces of lead in some tampons at levels below 0.5 parts per million, which is the maximum allowable dose for cancer and reproductive toxicity under California Proposition 65. But these tampons are tested for safety before going to market, have been found to be safe in product testing, are regulated and approved by the FDA, and do not include lead as an ingredient. Her cursory effort to transform a trace testing result into a wide-sweeping class action lawsuit fails for multiple reasons.

*First*, the regulation of tampons is for the Food and Drug Administration, not private plaintiffs. There is no dispute that Kotex tampons are labeled in accordance with current federal requirements, yet Plaintiff seeks to introduce new labeling disclosures about lead, despite federal law expressly preempting private plaintiffs from using lawsuits to impose requirements that are "different from, or in addition to," federal labeling requirements. 21 U.S.C. § 360k(a); 21 C.F.R. § 808.1(d). To the extent Plaintiff wishes to lobby for change, that also is a matter squarely within the primary jurisdiction of the FDA, and the FDA has recently taken up the issue at the center of Plaintiff's case. Whether under the preemption or primary jurisdiction doctrines, Plaintiff's lawsuit cannot serve as a stand-in for the FDA.

*Second*, Plaintiff lacks statutory standing to sue. The law requires Plaintiff to allege that she experienced a tangible monetary loss, yet all the facts alleged in the Amended Complaint fail to link the supposed testing results to the tampons she allegedly purchased. Plaintiff does not allege that she even used the tampons, and her theory of harm relies entirely on testing that her lawyers commissioned of tampons other than the ones she purchased. Testing of tampons that Plaintiff did not buy does not meet

1

Gibson, Dunn & Crutcher LLP

Plaintiff's burden of alleging well-pleaded facts about her purchase—especially when those testing results had only the faintest detections, which plausibly could have been caused by many other sources, including laboratory error. Plaintiff notably does not attach the testing results that this case is based upon, or provide any details at all about who, when, and how the testing was conducted.

*Third*, Plaintiff fails to state the elements of her fraud-based claims because she does not plausibly allege that Defendant made any affirmative misrepresentations or engaged in any material omissions. Plaintiff has not plausibly alleged that there actually *were* trace amounts of lead in the tampons she purchased. But even if she could amend to add those allegations, it would not make any statement about the tampons untrue, nor would it create an actionable omission because Plaintiff cannot identify any law requiring manufacturers to disclose when trace amounts of elements are present. Although she attempts to use California's Proposition 65 to fill this gap, she fails to meet the elements of a Proposition 65 claim, did not provide the requisite notice under Proposition 65, and therefore fails to allege a Proposition 65 violation.

*Finally*, the equitable claims should be dismissed because Plaintiff has an adequate remedy at law: she seeks CLRA damages and claims an economy injury, which is a hallmark example of damages. She also lacks standing for injunctive relief, as she does not allege that she would purchase the products again simply if their labeling were to change. Because the Court cannot issue an injunction requiring the product composition change Plaintiff desires, there is no basis for her to seek equitable relief.

For all these reasons, the Court should dismiss this case in its entirety.

## BACKGROUND

### I.    Kimberly-Clark Corporation's U by KOTEX Tampons.

Defendant Kimberly-Clark manufactures and sells U by KOTEX Click® compact tampons (the "Products") in three sizes—regular, super, and super plus. ECF No. 8 ("FAC") ¶¶ 1 n.1, 37, 44, 48, 52, 91. Kimberly-Clark has manufactured the tampons for decades, and earned the trusted support of the millions of women who use them on a

regular basis.  Plaintiff is one such consumer—she alleges that she has purchased "a multipack of regular and super Products" on multiple occasions, most recently in June 2024.  *Id.* ¶¶ 99–100.

The Products go through careful third-party review and testing before being marketed and sold to the public.  *See* Loose Decl., Ex. 3.  And as medical devices, they are regulated by the FDA.  *See id.*  The mandatory premarket testing includes "assess[ments] for safety," compliance with FDA guidance and standards for medical devices that contact the human body, and the "[b]iocompatibility" of the Products with human contact.  *Id.*  Defendant's testing has revealed no questions of safety or effectiveness.  *Id.*

The Products' packaging contains basic information on sizing, absorbency ranges, and an ingredients list.  *See* FAC ¶ 80.  The packaging supplements this information with advertising statements that they have "'no harsh ingredients'; they contain 'elemental chlorine-free rayon'; and they are 'pesticide free'; 'made without fragrance'; 'gynecologist tested'; and 'BPA free.'"  *Id.* ¶ 81.

## II.    Plaintiff Brings This Action on the Heels of a Research Article About Tampons in General.

In June 2024, researchers published an article discussing whether tampons could generally be regarded as a potential source of heavy metal exposure.  Loose Decl. Ex. 1; *see also* FAC ¶ 27 n.5.  The article claimed to be the first study to have measured and found metals, including lead, in fourteen unidentified tampon brands.  Loose Decl. Ex. 1 at 1, 7.  The article—which does not mention U by KOTEX at all—reached no conclusions about safety, or specific tampon brands, and cautioned that "no risk assessments have investigated vaginal exposure to metals," such that "future studies are necessary to assess whether metals can leach out of tampons and become bioaccessible for vaginal absorption."  *Id.* at 7.  Because the article did not find that any lead was migrating out of the tampons, it declined to "speculate on potential harm to the health of menstruators."  *Id.*

The article also acknowledged its own limitations. For example, it lacked "sufficient power to assess statistical differences" given the study's small sample size. *Id.* Moreover, it "conducted multiple statistical tests, which increases the possibility of Type I error (false positives)." *Id.* It likewise acknowledged that "this study does not provide information about potential bio-accessibility of tampon metals and thus [it] cannot estimate health risks (if any) from tampon use"—that is, the study focused on the *existence* of lead, and not whether any lead would have left the tampon in a form that was capable of being absorbed into the body. *Id.*

About a month after the article was published, Plaintiff filed this putative class action claiming that Defendant's tampons contain lead and "present[] an unreasonable safety hazard" to consumers. ECF No. 1 ¶¶ 1, 9 (initial complaint). Plaintiff's counsel based this lawsuit on testing that they allegedly commissioned, but scant details about the testing are given and a laboratory report has not been provided. Plaintiff then filed a First Amended Complaint, adding a claim for damages under the CLRA, but largely leaving the balance of the original pleading unchanged.

The Amended Complaint pleads several conclusions, namely that "independent scientific testing and analysis of the Products" shows that "ordinary and expected use of the Products exposes consumers" to more than the "0.5 micrograms [parts per million] of lead per day" allowed under California's Proposition 65's Maximum Allowable Dose Level ("MADL") for cancer and reproductive toxicity. FAC ¶¶ 2–3. This assertion is based on testing of some unknown number of "regular U by KOTEX Click® tampons." *Id.* ¶¶ 36 & n.13. And because the Products "are all manufactured by Defendant and contain the same ingredients," Plaintiff assumes that the Products—which are "sold in various sizes" and "have different gram weights"—must all contain an amount of lead that, when the Products are used multiple times per day, well exceed the MADL. *Id.* ¶¶ 36 n.13, 37, 44–55. Relying on a statement from the World Health Organization, and snippets of facts stitched together from various academic articles, Plaintiff suggests that even though the testing at most revealed trace levels, there is "no level of exposure to

1  lead that is known to be without harmful effects." *Id.* ¶¶ 7, 25–34.

2      Plaintiff alleges only economic injury, based on the price she paid for the

3  Products, as she says she would not have purchased the Products if Defendant had

4  disclosed the alleged presence of lead in the Products. *See id.* ¶¶ 21, 77–79, 107, 141,

5  151, 169–71.  Plaintiff asserts putative class claims under California's (1) Unfair

6  Competition Law ("UCL"); (2) False Advertising Law ("FAL"); and (3) Consumer

7  Legal Remedies Act ("CLRA").

8  **III.    The FDA's Ongoing Oversight of Tampons.**

9      In 1976, Congress enacted the Medical Devices Amendment ("MDA") to the

10  Food, Drug & Cosmetics Act ("FDCA"), which "imposed a regime of detailed federal

11  oversight" on medical devices. *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 316 (2008).

12  The MDA preempts "any requirement"—"with respect to a device intended for human

13  use"—that "is different from, or in addition to, any requirement applicable under this

14  chapter to the device," and that "relates to the safety or effectiveness of the device or to

15  any other matter included in a requirement applicable to the device under this chapter."

16  21 U.S.C. § 360k(a); *see also* 21 C.F.R. § 808.1(d) (implementing regulation).

17      The FDA "has broad powers under the MDA to classify and regulate medical

18  devices," *Papike v. Tambrands Inc.*, 107 F.3d 737, 739 (9th Cir. 1997), including

19  tampons, 21 C.F.R. §§ 884.5460, 884.5470; *see also Papike*, 107 F.3d at 739.  One such

20  "regulation[] concern[s] tampon labeling," which contains detailed and specific labeling

21  requirements in order "to protect the public and to minimize the serious adverse effects

22  of" toxic shock syndrome ("TSS"). *Papike*, 107 F.3d at 739 (quoting 21 C.F.R.

23  § 801.430(b)).  Nothing in the FDA's labeling requirements mandates a disclosure about

24  trace amounts of lead.

25      The FDA's oversight duties are ongoing in nature.  Accordingly, on September

26  10, 2024, the FDA published an update stating that it "is aware of concerns about tampon

27  safety after a 2024 study found metals in tampons during laboratory testing."  Loose

28  Decl. Ex. 2.  In response to these concerns, the FDA explained that before tampons are

Gibson, Dunn &
Crutcher LLP

5

"allowed onto the market, biocompatibility testing is undertaken by the manufacturing company, which is part of safety testing, and is reviewed by the FDA prior to market authorization." *Id.* The FDA noted that, "[w]hile the study found metals in some tampons, the study did not test whether metals are released from tampons when used," nor did it "test for metals being released, absorbed into the vaginal lining, and getting into the bloodstream during tampon use." *Id.* The FDA therefore did not order any immediate changes to tampon labeling or sales, and "commissioned an independent literature review and initiated an internal bench laboratory study to evaluate metals in tampons," and promised to "communicate [its] findings" at a later time. *Id.*

<strong>ARGUMENT</strong>

## I.    Plaintiff's Claims Should Be Dismissed Because They Intrude On The FDA's Role.

Plaintiff's case boils down to a claim that tampon manufacturers should have a duty to warn consumers about the potential presence of trace amounts of lead. *See, e.g.*, FAC ¶¶ 12–21. But when the product at issue is a device that Congress has entrusted to the FDA, "it is not within the province of the courts to decide what information must be disclosed on consumer packaging." *Paradowski v. Champion Petfoods USA, Inc.*, 2023 WL 3829559, at *3 (2d Cir. June 6, 2023). The content of labeling of those classes of products is for "the FDA to determine." *Id.*

The FDA has determined what labeling is required of tampons, and Plaintiff does not argue that the Kotex labeling fails to follow any applicable FDA rule or guideline. Her efforts to add a new disclosure on top of those required by the FDA are squarely preempted. And even if the FDA hadn't already established requirements for tampons, this case would still infringe on the FDA's purview because the FDA has recently initiated investigations into the same allegations of heavy metal presence in tampons. For either of these independent reasons, the case should not proceed.

### A.    Plaintiff's Claims are Preempted.

Plaintiff's attempt to mandate a labeling disclosure on tampon boxes is preempted

by federal law.  The MDA expressly preempts "any requirement"—"with respect to a device intended for human use"—that "is different from, or in addition to, any requirement applicable under [the MDA] to the device" and that "relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under [the MDA]."  21 U.S.C. § 360k(a).  In other words, "any existing divergent State or local requirements" applicable to medical devices are preempted "when the [FDA] has established specific counterpart regulations or there are other specific requirements applicable to a particular device under the [FDCA]."  21 C.F.R. § 808.1(d).

That straightforward interpretation of the MDA's plain text ensures that federal requirements as to medical devices preempt *any* state or local requirement that "is different from, or in addition to" federal requirements already applicable to that specific device.  *See, e.g.*, *Riegel*, 552 U.S. at 321–25 (state law claims challenging safety and effectiveness of catheters were preempted by the FDA's premarket approval process); *Perez v. Nidek Co.*, 711 F.3d 1109, 1117–19 (9th Cir. 2013) (fraud by omission claim seeking a "disclosure requirement" on a LASIK laser system was preempted because that disclosure was "different from, or in addition to" those imposed by the MDA).

This applies equally to tampons, which have codified, "device-specific label" and disclosure requirements.  *Dickson v. Dexcom, Inc.*, 2024 WL 3417392, at *6–7 (W.D. La. July 15, 2024) (codified requirements under the MDA preempted state law claims); *see also* 21 C.F.R. § 801.430.  Tampon labels must include (1) various disclosures about TSS (21 C.F.R. § 801.430(c)–(d)); and (2) specific disclosures about "absorbency terms" and how to understand those terms to allow someone to select a tampon with "the minimum absorbency needed to control menstrual flow in order to reduce the risk of contracting TSS" (*id.* § 801.430(e)).  In prior lawsuits, some plaintiffs have alleged that these requirements are not enough.  The Ninth Circuit has rejected that notion, and held that any claims that assert "the federal requirements [over tampon labels] do not suffice" and that seek to "add a variety of warning statements not required by the federal

regulation" are preempted. *Papike*, 107 F.3d at 742. Accordingly, in prior litigation involving Kotex tampons, state law claims "dealing with inadequate warnings or labeling" of tampons were held to be "pre-empted by § 360k(a)" of the MDA. *Choi v. Kimberly-Clark Worldwide, Inc.*, 2019 WL 4894120, at *7 (C.D. Cal. Aug. 28, 2019). Other courts have likewise rejected attempts to impose labeling that "go[es] beyond" what is required by the FDA. *Bruno v. BlueTriton Bands, Inc.*, 2024 WL 2794098, at *2–3 (C.D. Cal. May 6, 2024) (dismissing, on preemption grounds, UCL, CLRA, and FAL claims asserting that water bottles labeled as "100% Mountain Spring Water" failed to disclose the presence of microplastics).

Plaintiff's effort to impose a new disclosure here is no different. Plaintiff seeks to attack the adequacy of the label notwithstanding the FDA's guidance. This is precisely what preemption seeks to prevent. Because federal regulations impose detailed tampon-labeling requirements, but do not include any of the lead-based disclosures Plaintiff seeks, this is a textbook case of co-opting state law to add labeling requirements that are both "different from" and "in addition to" the FDA's. 21 C.F.R. § 808.1(d); *see also* 21 U.S.C. § 360k(a).

## B. Alternatively, Plaintiff's Claims Should Be Dismissed or Stayed Because the FDA Has Primary Jurisdiction.

Even if Plaintiff's claims were not preempted (they are), the case should be dismissed or stayed under the primary jurisdiction doctrine because the FDA has decided "to engage in active consideration of the issue presented by plaintiff['s] claim[s]." *Swearingen v. Yucatan Foods, L.P.*, 59 F. Supp. 3d 961, 965 (N.D. Cal. 2014). This doctrine allows courts to dismiss claims without prejudice or stay proceedings when "an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).

This doctrine applies if a claim requires resolution (1) "of an issue of first

impression" or (2) "of a particularly complicated issue that Congress has committed to a regulatory agency, and if protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *Id.* (citations and quotation marks omitted). If one of those threshold conditions are met, the court will then examine whether there is "(1) [a] need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Id.* at 1115. Each element applies here.

Plaintiff's claims necessarily require resolution of an issue of first impression: whether trace amounts of lead less than 0.5 part per million in tampons pose any risk of harm. The June 2024 article, which the Amended Complaint incorporates to advance its claims, acknowledged that "no previous studies have measured metals in tampons," and that it was not known if any of the small amounts of lead detected in the study could leave the tampon and be absorbed by the body. Loose Decl. Ex. 1 at 1. The article also cautioned that there is a "lack of data on the absorption of chemicals through the vaginal mucosa," "no risk assessments have investigated vaginal exposure to metals," and "future research is necessary to replicate" this "exploratory" study's "findings." *Id.* at 7–8. The FDA confirmed that this was a novel issue that arose from the June 2024 article's findings and that warranted the FDA's own assessment. *See* Loose Decl. Ex. 2. The FDA's acknowledgement that this is a novel issue, which depends on unperformed scientific assessments, leaves little room for any serious contention that both threshold conditions for primary jurisdiction are met.

The same is true of the remaining elements. Congress has placed this issue "within the jurisdiction of an administrative body having regulatory authority" (the FDA) "pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority" (the MDA). *Clark*, 523 F.3d at 1115. Congress has delegated to the FDA "broad powers" "to classify and regulate medical devices." *Papike*, 107 F.3d

at 739 (citing 21 U.S.C. § 360c(b)–(f); 21 U.S.C. § 371(a)).  This authority includes regulation over tampons and tampon labeling.  *See, e.g.*, 21 C.F.R. §§ 801.430, 884.5460, 884.5470.  Therefore, the primary jurisdiction doctrine protects the FDA's "quasi-legislative powers" and its "active[] involve[ment] in the administration of" the applicable regime here.  *Clark*, 523 F.3d at 1115.

The resolution of Plaintiff's claims requires the FDA's specialized expertise in regulating tampons.  *See, e.g.*, 21 C.F.R. §§ 801.430, 884.5460, 884.5470.  "Whether a body of evidence sufficiently demonstrates that a particular amount of a chemical substance poses a serious public health risk is precisely the kind of expert question that agencies are better suited to answer than courts."  *Backus v. Gen. Mills, Inc.*, 122 F. Supp. 3d 909, 933 (N.D. Cal. 2015).  That kind of expertise is required here—both the study that precipitated this lawsuit and the FDA's own statement acknowledge that the currently available facts do not support the kind of conclusions Plaintiff wishes to make about the safety of tampons.  *See* Loose Decl. Ex. 1 at 1, 7–8; *see also id.* Ex. 2.

Invoking the primary jurisdiction doctrine is proper here, as "[t]his is not a case where the FDA has been silent on the question of whether it will resolve the issue" (*Backus*, 122 F. Supp. 3d at 945), or where "the agency is aware of but has expressed no interest in the subject matter of the litigation" (*Fernandez v. Atkins Nutritionals, Inc.*, 2018 WL 280028, at *10 (S.D. Cal. Jan. 3, 2018) (Curiel, J.)).  Rather, the FDA has publicly announced that (1) it has "commissioned an independent literature review and initiated an internal bench laboratory study to evaluate metals in tampons," which will "enable the FDA to complete a risk assessment of metals contained in tampons"; and (2) it will "communicate [its] findings from the literature review and lab testing publicly when they are available" and "monitor[] these devices as part of its total product lifecycle approach to medical devices."  Loose Decl. Ex. 2.

Allowing the FDA to bring its expertise and resources to bear on this issue will "provide the Court and both parties necessary clarity."  *Thomas v. Costco Wholesale Corp.*, 2014 WL 5872808, at *5 (N.D. Cal. Nov. 12, 2014).  Because the FDA "has not

formally established its position" on this novel issue and "expects" to do so following further review, the primary jurisdiction doctrine warrants a dismissal or stay. *Colette v. CV Sciences, Inc.*, 2020 WL 2739861, at *4–5 (C.D. Cal. May 22, 2020); *see Gusman v. Comcast Corp.*, 2014 WL 2115472, at *2–5 (S.D. Cal. May 21, 2014) (Curiel, J.).

## II.    Plaintiff Lacks Statutory Standing.

Plaintiff's claims should be dismissed for an independent reason—Plaintiff lacks statutory standing. Each of Plaintiff's UCL, FAL, and CLRA claims requires "lost money or property as a result of the unfair competition'"—in other words, Plaintiff must have experienced an "economic injury." *Sanchez v. Nurture, Inc.*, 626 F. Supp. 3d 1107, 1115 (N.D. Cal. 2022); *see also Pels v. Keurig Dr. Pepper, Inc.*, 2019 WL 5813422, at *2 (N.D. Cal. Nov. 7, 2019). Plaintiff appears to invoke two theories of economic injury: (1) the "benefit of the bargain" theory and (2) the "overpayment" theory. *See McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 705–08 (9th Cir. 2020). But Plaintiff fails to connect the dots between her alleged purchase and these theories of purported economic harm, because all of the problems she identifies are in tampons she did not buy. *See Pels*, 2019 WL 5813422, at *5. Without allegations that the tampons she purchased contained the same levels of lead as those tested, Plaintiff fails to allege how she has statutory standing to sue over the tampons that were tested, regardless of the theory advanced.

Under the "benefit of the bargain" theory, Plaintiff must allege she "bargained for a product worth a given value but received a product worth less than that value." *McGee*, 982 F.3d at 705–06. She has not done so. Plaintiff has "not alleged the loss of value of a durable good that [she] still own[s]," and instead "complain[s] about a consumable good" that she does not allege did not work as intended. *Herrington v. Johnson & Johnson Consumer Cos.*, 2010 WL 3448531, at *5 (N.D. Cal. Sept. 1, 2010) (no economic injury from buying children's bath products where plaintiffs "do not even allege that they can return the products of which they complain"). Nothing in the Amended Complaint remotely suggests that the Products did not work as intended or had "diminished value due to the presence of the lead"—thus, Plaintiff "received the

benefit of the bargain, as a matter of law, when [she] purchased these products." *Boysen v. Walgreen Co.*, 2012 WL 2953069, at *4 (N.D. Cal., July 19, 2012) (dismissing UCL and false advertising claims premised on lead in fruit juices); *see also In re Plum Baby Food Litig.*, 637 F. Supp. 3d 210, 223 (D.N.J. 2022) ("[P]laintiffs receive the benefit of their bargain so long as there were no adverse health consequences, and the product works as intended.").

Plaintiff's theory is even more specious given the lack of allegations about the tampons she purchased. She does not, for instance, allege facts about her use of the tampons, and therefore cannot claim that the product did not work as intended. Nor does she allege that *her* tampons were tested for lead, and therefore has not alleged that the tampons she purchased "*actually exhibited* the alleged defect." *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014). Instead, she believes lead is present in her tampons because some other tampon tested positive for trace amounts of lead. But she provides no reason why the results of a single standalone study can be extrapolated across all of the Products or to the specific tampons that Plaintiff purchased. *See Pels*, 2019 WL 5813422, at *5 ("[P]laintiff has failed to plead a particularized injury by failing to plead the water *he* purchased contained violative arsenic levels.").

Plaintiff also has not alleged an "overpayment" injury because she does not plausibly allege "that she paid more for a product than she otherwise would have due to a defendant's false representations about the product." *McGee*, 982 F.3d at 706. For instance, Plaintiff does not allege "how much [she] would have paid for [the Products] absent the alleged deception, whether [Defendant] (as opposed to a third-party distributor) was responsible for any overpayment, or any other details regarding the price premium." *Naimi v. Starbucks Corp.*, 798 F. App'x 67, 70 (9th Cir. 2019). "The bare recitation of the word 'premium' does not adequately allege a cognizable injury" under Rule 12(b)(6). *Id.*; *see also In re Plum Baby Food Litig.*, 637 F. Supp. 3d at 226 ("threadbare 'but-for' assertions" that "do not specify any alternative, cheaper products" that would show the premium paid for the defendants' products were insufficient to

Gibson, Dunn & Crutcher LLP

establish "standing under a premium price economic injury theory").

The bare-bones nature of Plaintiffs' allegations implicates a more fundamental injury problem, too:  she has not plead facts establishing that Defendant made a *false* representation that caused her to overpay for the Products.  In *Herrington*, for example, the plaintiffs had argued that "they would have never purchased" certain products if they had known about the presence of carcinogens in the products.  2010 WL 3448531, at *4. Their allegations that "scientists believe there is no safe level of exposure to a carcinogen," "children are generally more vulnerable to toxic exposure than adults," and certain chemicals were "detected in Defendants' products," were *insufficient* to show "a palpable risk" of harm from defendants' products.  *Id.* at *3.  The plaintiffs thus did "not plead a distinct risk of harm from a defect in Defendants' products that would make … an economic injury cognizable." *Id.* at *4; *see also Boysen*, 2012 WL 2953069, at *7.

As explained below, Plaintiffs' allegations are even weaker than the deficient allegations in *Herrington*, because she does not plausibly allege that the Products she purchased contained lead, that *any* of the Products contain levels of lead that were harmful, or that *any* amount of lead allegedly present in the Products are capable of harming consumers, or even being absorbed into the body. *See infra* pp. 14–17.

## III.   Plaintiff Fails to Allege She Was Misled or Deceived.

In addition to the foregoing deficiencies, Plaintiff's claims fail to allege the basic elements of a consumer fraud claim.  "Because the same standard for fraudulent activity governs all three statutes, courts often analyze the three statutes together." *In re Plum Baby Food Litig.*, 2024 WL 1354447, at *4 (N.D. Cal. Mar. 28, 2024).  And because all of Plaintiff's claims are "grounded in fraud," the Amended Complaint must satisfy "the heightened pleading requirements of Rule 9(b)." *Davidson v. Sprout Foods, Inc.*, 106 F.4th 842, 852 (9th Cir. 2024); *see also Corbett v. Pharmacare U.S., Inc.*, 544 F. Supp. 3d 996, 1006 (S.D. Cal. 2021) (Curiel, J.).  All three claims are also governed by the "reasonable consumer standard," which asks whether "members of the public are likely to be deceived" by Defendant's advertising. *Williams v. Gerber Prod. Co.*, 552 F.3d

934, 938 (9th Cir. 2008).

## A. Plaintiff Fails to Plausibly Allege the Products She Bought Contain Unsafe Amounts of Lead.

Plaintiff's claims all turn on the premise that the tampons she purchased contained lead, based on some unidentified "independent laboratory testing and analysis" of "regular U by KOTEX Click® tampons" that found that they "contain .189 mcg of lead per gram of Product." FAC ¶¶ 36 & n.13. These cursory allegations are insufficient on multiple fronts.

First, the testing allegations alone are too vague to survive scrutiny. Multiple courts have rejected a plaintiff's generic reliance on "independent testing" without more "specific allegations." *In re Bang Energy Drink Mktg. Litig.*, 2020 WL 4458916, at *4–5 (N.D. Cal. Feb. 6, 2020). At a minimum, Plaintiff must allege "the testing methodology followed," the specific time of the testing, and "the qualifications of the testers." *Trammel v. KLN Enters., Inc.*, 2024 WL 4194794, at *5 (S.D. Cal. Sept. 12, 2024). Otherwise, "bare, unsubstantiated allegations about the possibility that the Product" contains a particular substance, "'without any additional factual support,' [are] not sufficient to establish" the presence of that substance. *Id.*; *see also Lowe v. Edgewell Pers. Care Co.*, 2024 WL 150758, at *5 (N.D. Cal. Jan. 12, 2024) ("[T]esting allegations" that tampons contain PFAS were too "cursory, providing no specificity as to the results reached or any other findings that would support Plaintiffs' interpretation of those results.").

Plaintiff's testing allegations fall far short of what courts require. Plaintiff does not, for example, say when the testing was done, how many tampons were tested, what lot they came from, what the parameters for the testing were, what controls were used (if any), who performed the testing, or what their qualifications were.

Second, even if the details of the testing were plausibly alleged, there is "no reason to think *all*" regular, super, and super plus tampons—including the tampons that Plaintiff allegedly purchased—also contain lead. *Wallace*, 747 F.3d at 1030. The testing of one

particular tampon is not sufficient to extrapolate beyond that one specific test, and from what is alleged in the Amended Complaint, there is no "particularized reason to think" Plaintiff's own tampons "actually [contained] the alleged" lead. *Wallace*, 747 F.3d at 1030. It is an exercise in "pure speculation" to assume so simply because there are references to a testing result that was not derived from testing Plaintiff's products. *Id.* at 1030–31. Because Plaintiff provides no basis for assuming that the results of a single standalone study can be extrapolated to all of the Products or the tampons that Plaintiff purchased, she has not pleaded an actionable problem with the products she bought.

Third, even if the Court accepted Plaintiff's extrapolations from the testing, it would not absolve her from pleading facts showing that the tampons contained "unsafe levels of [lead]." *Rodriguez v. Equal Exch., Inc.*, 2024 WL 1421971, at *4 (S.D. Cal. Mar. 31, 2024). Plaintiff does not allege any facts explaining that she was exposed to unsafe levels of lead. Instead, she simply assumes that 100% of any lead in the tampons are released. She then assumes that 100% of that lead would be absorbed by the body. *See* FAC ¶¶ 26–27 & n.5, 33 (citing June 2024 article). But there is no support for either the assumption that any lead leaves the tampon, or the assumption that released lead is absorbed. And the Shearston article Plaintiff cites reaches the *opposite* conclusion: it "cannot speculate on potential harm to the health of menstruators" because "future studies are necessary to assess whether metals can leach out of tampons and become bioaccessible for vaginal absorption." Loose Decl. Ex. 2 at 7. This Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," so Plaintiff's conclusory allegations about alleged exposure to lead should be disregarded when considering this motion to dismiss. *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1096 (9th Cir. 2004).

Equally conclusory is Plaintiff's assertion that there "[t]here is no level of exposure to lead that is known to be without harmful effects." FAC ¶ 7. Plaintiff points to a World Health Organization Internet page in support, but as another court recently found, "using the World Health Organization's declaration that there is no safe lead level

as a reference is too conclusory" on its own and would "render[] literally *any* alleged level of lead actionable." *Krystofiak v. BellRing Brands, Inc.*, 2024 WL 3012801, at *8 (N.D. Cal. June 14, 2024). The Ninth Circuit agrees, noting that similar UCL, FAL, and CLRA claims fail where a plaintiff does "not explain at what level [the allegedly harmful ingredient] become harmful or why the levels of [that ingredient] in [the challenged] products, in particular, could cause harm." *Sprout Foods*, 106 F.4th at 853.

Similarly, in *Grausz v. Hershey Co.*, 713 F. Supp. 3d 818 (S.D. Cal. 2024), the court gave no weight to the pleaded conclusion that "no amount of lead is known to be safe," and that the defendant's dark-chocolate products were unsafe because they contained small amounts of lead. *Id.* at 828. The court found that those allegations failed to plead that "the amounts of the substances in Hershey's Products have created an *unreasonable* safety hazard," and it dismissed the plaintiff's UCL, FAL, and CLRA claims. *Id.*; *see also, e.g.*, *Rodriguez v. Mondelez Glob. LLC*, 703 F. Supp. 3d 1191, 1210 (S.D. Cal. 2023) ("Plaintiffs allege no amount of lead is safe and even low levels of cadmium can cause health concerns," but that alone does not amount to a plausible allegation that the defendant "concealed an *unreasonable* safety hazard."); *In re Trader Joe's Co. Dark Chocolate Litig.*, 2024 WL 1319725, at *11 (S.D. Cal. Mar. 27, 2024) ("[T]here is a disconnect in the [complaint] between Plaintiffs' allegations about the potential harms posed by Heavy Metals as a general matter and whether these Heavy Metals are unreasonably hazardous at the particular levels in the specific Products at issue in this case. . . . Plaintiffs cannot just say Heavy Metals can be unhealthy and these Products contain some level of Heavy Metals.").

Nor is it enough for Plaintiff to say that lead is harmful once it reaches Proposition 65's Maximum Allowable Dose Level ("MADL") "for reproductive toxicity." FAC ¶ 35. Courts have repeatedly rejected such formulaic invocations of Proposition 65's MADL, because the Proposition 65 levels are not safety thresholds, but rather statutory notice "safe harbor" thresholds. *See, e.g.*, *In re Trader Joe's*, at *11 & n.15 (alleging that products contain lead "above MADL levels" alone "do[es] not allege that these

levels can cause the harms alleged"); *Hayden v. Bob's Red Mill Nat. Foods, Inc.*, 2024 WL 1643696, at *8 (N.D. Cal. Apr. 16, 2024) (rejecting reliance on the MADL to show health risks because "the complaint does not explain why the MADL is the right reference point if Plaintiff's concern is healthfulness, as opposed to Proposition 65 compliance"); *Krystofiak*, 2024 WL 3012801, at *8 (comparing "the measured lead levels" to "the Prop 65 MADL" is insufficient).

Because Plaintiff fails to plausibly allege there was an unhealthy presence of lead in the Products she purchased, there was no actionable omission.

### B.    Plaintiff Fails to Allege an Actionable Misrepresentation.

According to the Amended Complaint, the Products contained the following representations: "'no harsh ingredients'; that they contain 'elemental chlorine-free rayon'; and that they are 'pesticide free'; 'made without fragrance'; 'gynecologist tested'; and 'BPA free.'" FAC ¶ 81. Plaintiff alleges that these representations constitute affirmative misrepresentations because they "lead reasonable consumers to believe that the Products are safe to use because they are free from potentially harmful elements and ingredients" despite (allegedly) containing lead. *Id.* ¶¶ 82–83.

This theory fails because none of the representations "relate to heavy metals" like lead. *In re Plum Baby Food Litig.*, 637 F. Supp. 3d at 224. To start, no reasonable consumer could believe representations that the Products "contain 'elemental chlorine-free rayon,'" "are 'pesticide free,'" are "made without fragrance," are "gynecologist tested," and are "BPA free," communicate anything about lead. Courts have held similar representations, such as that products are Non-GMO, Gluten-Free, and Organic had nothing to do with the levels of heavy metals in the products. *E.g.*, *Hayden*, 2024 WL 1643696, at *7 (representations that products are "Non-GMO," "Gluten-Free," and "Organic" were not misleading because they did not say anything about the allegedly "unsafe and unlawful levels of cadmium" in the products); *Rodriguez*, 2024 WL 1421971, at *5 ("[I]t is not plausible that the labeling statements here—such as 'always small farmer grown'—are misrepresentations about toxin levels that support" a

misrepresentation claim.).

The same is true of the "no harsh ingredients" statement.  FAC ¶ 81.  This statement conveys what ingredients are used to make the product:  rayon, polyester, polyethylene, paraffin wax, and titanium dioxide.  *See id.* ¶ 80.  Plaintiff does not allege that any of these ingredients are harsh.  Instead, Plaintiff attempts to bootstrap this statement into something about traces of lead content.  But the statement about ingredients used to make the product is not about lead content, and Plaintiff does not allege that lead is an ingredient in the tampons—nor could she.  Courts have thus concluded that similar general advertising statements—like baby food being "perfect" and "nutritious"—were not misrepresentations simply because there were trace amounts of lead in the product.  *E.g.*, *In re Plum Baby Food Litig.*, 637 F. Supp. 3d at 224; *Rodriguez*, 2024 WL 1421971, at *4 (rejecting the "unreasonable inference[]" that statements unrelated to heavy metals supported a misrepresentation claim).

### C.    Plaintiff Fails to Allege an Actionable Material Omission.

Plaintiff also alleges that Defendant *omitted* "that the Products contain lead." FAC ¶ 140; *see also id.* ¶¶ 17–19, 81–82, 103–06.  But an actionable fraudulent omission must either be "contrary to a representation actually made by the defendant, or *an omission of a fact the defendant was obliged to disclose*."  *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018).

As explained above, the representations identified by Plaintiff are not contrary to the alleged omission, because the alleged omission—that the Products are unsafe because they contain harmful amounts of lead that makes its way into consumer's bodies—is not true.  "A defendant only has a duty to disclose when either (1) the defect at issue relates to an unreasonable safety hazard or (2) the defect is material, 'central to the product's function,'" *and* "the plaintiff alleges one of" the so-called "*LiMandri* factors."  *In re Trader Joe's*, 2024 WL 1319725, at *10.

As described above (*supra* pp. 14–17), there is no omitted defect that "relates to an unreasonable safety hazard."  *See Grausz*, 713 F. Supp. 3d at 828 (allegations that

"[t]here may be no safe level of exposure to" lead, and that the defendant's products contained some amount of lead, was insufficient to plead an unreasonable safety hazard); *Rodriguez*, 703 F. Supp. 3d at 1210 (allegations that "no amount of lead is safe" does not alone establish "an *unreasonable* safety hazard"); *In re Trader Joe's*, 2024 WL 1319725, at *11 ("allegations about the potential harms posed by Heavy Metals as a general matter" are not enough alone to establish "whether these Heavy Metals are unreasonably hazardous at the particular levels in the specific Products at issue in this case"); *In re Plum Baby Food Litig.*, 2024 WL 1354447, at *5 (similar).

Plaintiff likewise cannot allege that the Products have a material defect that is central to the Products' function. Plaintiff nowhere alleges any concern with how the product functioned or performed, and she does not allege that trace amounts of lead impact product functionality. *See, e.g.*, *Hayden*, 2024 WL 1643696, at *10 ("The alleged presence of cadmium notwithstanding, Plaintiff has not plausibly pled that the Products have ceased to function as a food, or even more specifically as flaxseed."); *Hodsdon*, 891 F.3d at 864–65 (similar); *In re Plum Baby Food Litig.*, 2024 WL 1354447, at *6 (similar).

### D. Plaintiff Fails to Allege the Unfair and Unlawful Prongs of a UCL Claim.

Plaintiff also fails to state a claim under the UCL's unfair or unlawful prongs. "Generally, where conduct that comprises the UCL fraudulent or unlawful prongs is the same conduct as the unfair prong, 'the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive.'" *In re Plum Baby Food Litig.*, 2024 WL 1354447, at *7. For that reason, Plaintiff's UCL claim also fails under the "unfairness prong" of the UCL. It also fails on the merits. "An 'unfair' prong claim must be proven under either (1) the 'tethering test,' which looks to whether the defendant's conduct violates some policy set forth in a statute or regulation, or (2) by establishing that the defendant's conduct is 'substantially injurious, immoral, or unethical.'" *Id.* Plaintiff does not allege the violation of any independent policy. And

a defendant's "failure to disclose information it had no duty to disclose in the first place is not substantially injurious, immoral, or unethical." *Hodsdon*, 891 F.3d at 867.

## IV.    Plaintiff's Equitable Claims Should Be Dismissed.

Plaintiff's request for restitution under the UCL and FAL and for injunctive relief under the UCL, FAL, and CLRA should be dismissed because Plaintiff has an adequate remedy at law. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Plaintiff also lacks Article III standing to seek injunctive relief because she "has not plausibly alleged a real or immediate threat of repeated injury in the future." *Renn v. Otay Lakes Brewery, LLC*, 2024 WL 331616, at *8 (S.D. Cal. Jan. 29, 2024) (Curiel, J.).

### A.    Plaintiff's Equitable Claims Are Improper Because She Has An Adequate Remedy at Law.

"In order to entertain a request for equitable relief [under California's consumer-protection statutes], a district court must have equitable jurisdiction, which can only exist under federal common law if the plaintiff has no adequate legal remedy." *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022), *cert. denied sub nom. Polaris Indus. Inc. v. Albright*, 143 S. Ct. 2612 (2023). Plaintiff's requests for equitable relief fail because Plaintiff seeks damages under the CLRA (FAC ¶ 175), which is "an adequate legal remedy." *Guzman*, 49 F.4th at 1312; *see also, e.g.*, *Kenney v. Fruit of the Earth, Inc.*, 2023 WL 3565076, at *3 (S.D. Cal. Apr. 3, 2023) (similar); *Rodriguez*, 2024 WL 1421971, at *9–10 (dismissing request for restitution without leave to amend because plaintiff sought CLRA damages); *Shay v. Apple Inc.*, 2021 WL 1733385, at *3–5 (S.D. Cal. May 3, 2021) (Curiel, J.) (applying this requirement to "injunctive relief claims").

Plaintiff does not allege why her request for damages is inadequate. That "flaw is fatal" to her equitable claims. *Scheibe v. Performance Enhancing Supplements, LLC*, 2023 WL 5444644, at *5 (S.D. Cal. Aug. 23, 2023). The only time the Amended Complaint even *mentions* the inadequacy of legal remedies is a single, conclusory

sentence that "Plaintiff's legal remedies are inadequate to prevent future injuries." FAC ¶ 112. This passing statement is contradicted by the rest of the Amended Complaint. As discussed above (*supra* pp. 11–13), Plaintiff claims that she incurred an economic injury (*see, e.g.*, FAC ¶¶ 77, 79), which is "exactly the type of injury for which legal remedies are appropriate." *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 908 (N.D. Cal. 2021).

Because Plaintiff fails to "plead inadequate legal remedies in the operative pleading," her equitable claims must be dismissed. *Shay*, 2021 WL 1733385, at *4.

### B. Plaintiff Lacks Article III Standing to Pursue Injunctive Relief.

Plaintiff lacks standing to pursue injunctive relief because she fails to allege that she faces a risk of injury that is "actual and imminent, not conjectural or hypothetical." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). Here, Plaintiff asks that this Court force Defendant to reformulate the Products by alleging that she "would like to purchase the Products in the future if the Products did not contain lead." FAC ¶ 109.

Courts have rejected similar calls for mandatory injunctions demanding alterations to products. In *Renn*, for example, the plaintiff alleged that a kombucha beverage's "health and wellness representations" were misleading because it contained "six to eight percent alcohol by volume and any alcohol consumption harms health." 2024 WL 331616, at *2, *8. He sought injunctive relief, alleging that he "would purchase Nova Kombucha if it were reformulated" to not have so much alcohol. *Id.* at *8. This Court dismissed the injunctive relief claim because "a court cannot impose a mandatory injunction requiring a company to alter its products." *Id.*; *see also Prescott v. Nestle USA, Inc.*, 2020 WL 3035798, at *6 (N.D. Cal. June 4, 2020) (similar). Plaintiff's request for a reformulated tampon is no different.

### V. Plaintiff's UCL Claim Should Be Dismissed For Failing to Satisfy Proposition 65's Notice Requirement.

"Private parties who wish to sue to enforce Proposition 65's requirements must

first wait 60 days after giving 'notice of an alleged violation' to several parties: 'the alleged violator,' California's Attorney General, and local prosecutors." *Rodriguez*, 2024 WL 1421971 at *2. This applies to actions "explicitly brought under Proposition 65 as well as to camouflaged suits to enforce Proposition 65's strictures using other laws." *Id.* This requirement is "strictly enforced"—"defective notice cannot be cured retroactively" and warrants dismissal with prejudice. *Id.*

Plaintiff alleges that, though she "does not bring claims pursuant to Proposition 65, Defendant's violation of Proposition 65 provides a predicate basis for violation of California's Unfair Competition Law," and that Defendant purportedly failed "to provide a 'clear and reasonable' warning to consumers" about the alleged lead in the Products. FAC ¶¶ 65, 67. Plaintiff, however, did not provide a 60-day prelitigation notice under Proposition 65 before filing suit. This is the very type of "disguised effort to press claims under Proposition 65, while skirting its notice barrier," that courts have criticized. *Rodriguez*, 2024 WL 1421971, at *3; *see also Gutierrez v. Johnson & Johnson Consumer, Inc.*, 2020 WL 6106813, at *3–5 (S.D. Cal. April 27, 2020). Accordingly, Plaintiff's UCL claim should be dismissed because it seeks to impose a "duty to warn arising from lead's … alleged impact on cancer or reproductive toxicity." *Rodriguez*, 2024 WL 1421971, at *7.[1]

**CONCLUSION**

For the foregoing reasons, this Court should dismiss the Amended Complaint in full, or in the alternative, stay proceedings pending the FDA's investigation of the issues raised by the Amended Complaint. At a minimum, this Court should dismiss the Plaintiff's equitable claims and any claims predicated on a Proposition 65 violation.

---

[1] It is not clear if Plaintiff is predicating the entire complaint or just her UCL claim on Proposition 65's thresholds. To the extent that she bases the entire complaint on alleged non-compliance with Proposition 65, the entire complaint should be dismissed. *See, e.g.*, *Rodriguez*, 2024 WL 1421971, at *2; *Gutierrez*, 2020 WL 6106813, at *4; *Harris v. R.J. Reynolds Vapor Co.*, 2016 WL 6246415, at *2 (N.D. Cal. Sept. 30, 2016).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DATED:  October 7, 2024                    Respectfully submitted,


GIBSON, DUNN & CRUTCHER LLP


By: */s/ Timothy W. Loose*

        Timothy W. Loose

Attorneys for Defendant KIMBERLY-
CLARK CORPORATION

23