Naomi Spector (SBN 222573)
Email: nspector@kamberlaw.com
**KAMBERLAW, LLP**
3451 Via Montebello, Ste.192-212
Carlsbad, CA 92009
Phone: 310.400.1053
Fax: 212.202.6364

Counsel for Plaintiff Allison Barton, and the
Putative Class

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| | **CASE NO. 3:24-CV-1337-GPC-KSC** |
| **ALLISON BARTON, individually, and on behalf of others similarly situated,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**KIMBERLY-CLARK CORPORATION,**<br>**Defendant.** | ~~**FIRST**~~**SECOND AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>**1.  UNFAIR AND UNLAWFUL BUSINESS ACTS AND PRACTICES (CAL. BUS & PROF. CODE §17200 ET SEQ.);**<br>**2.  DECEPTIVE ADVERTISING PRACTICES (CAL. BUS & PROF. CODE §§ 17500, ET SEQ.); AND**<br>**3.  CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750, ET SEQ.).**<br><br>**"DEMAND FOR JURY TRIAL"** |

Pursuant to the Court's Order Denying in Part and Granting in Part Motion to Dismiss, Doc. 24 ("Order"), Plaintiff Allison Barton on behalf of herself and others similarly situated in California, by and through her undersigned counsel, hereby files this ~~First~~Second Amended Class Action Complaint and states as follows based on

investigation and information and belief:

## I.    INTRODUCTION

1.    ~~In violation~~It is a longstanding principle of California consumer protection law~~,~~ that product labeling should be truthful and not misleading in order to facilitate informed purchasing decisions.

~~1.~~2.    Defendant Kimberly-Clark ~~Corporation ("Defendant") fails to disclose, and materially omits, that~~ Corporation's ("Defendant's") labeling of its U by KOTEX Click® compact tampons (the "Products")[1] ~~contain lead.~~violates California consumer protection law.

~~2.    California's Proposition 65 sets the Maximum Allowable Dose Level ("MADL") for reproductive toxicity at 0.5 micrograms of lead per day.[2]~~

~~3.    Based on independent scientific testing and analysis of the Products, ordinary and expected use of the Products exposes consumers to far more than 0.5 micrograms of lead per day.~~

~~4.    Independent scientific testing and analysis of certain other tampons, however, demonstrates that other tampons do not contain a detectable amount of lead.~~

~~5.    Defendant has the ability to manufacture tampons that do not contain lead.~~

[1] This action includes in the definition of "Products" all sizes and configurations of U by KOTEX Click® compact tampons sold during the Class Period (defined below), including but not limited to: Regular, Super, and Super Plus tampons.

~~[2] This action is not brought pursuant to Proposition 65 but, as set forth herein, is brought pursuant to California's consumer protection laws based on consumer deception due to the mislabeling of the Products. Proposition 65, however, provides a predicate basis for violation of the consumer protection law. Proposition 65 also establishes the specific levels of exposure set forth by the California legislature at which "businesses [are required] to provide warnings to Californians about significant exposures to chemicals that cause cancer, birth defects or other reproductive harm." https://oehha.ca.gov/proposition-65/about-proposition-65#:~:text=What%20is%20Proposition%2065?,into%20sources%20of%20drinking%20water.~~

6.    Defendant willfully or negligently manufactures the Products such that they contain a detectible, substantial amount of lead.

7.    The World Health Organization states: "There is no level of exposure to lead that is known to be without harmful effects."[3]

8.    The lead in the Products is particularly problematic for consumers based on the intended manner of use of the Products.

9.    The Products are intended to be inserted vaginally.

10.    Thus, unlike food containing lead that is consumed orally, the Products do not metabolize, and the lead contained in the Products is not filtered by the liver.

11.    The lead contained in the Products can directly enter the bloodstream.

12.    The lead in the Products presents an unreasonable safety hazard, both due to the manner of use of the Products and the amount of lead contained in the Products.

13.    Defendant knows or should know that the Products contain lead.

14.    Defendant has an independent duty to disclose the lead in the Products based on the health risk associated with use of the Products and/or because the Products are unfit for consumer use.

15.    Defendant does not disclose, and materially omits, that the Products contain lead.

16.    Although Defendant does not disclose that the Products contain lead, Defendant makes other advertising statements on the Product labels, which are designed to increase sales of the Products.

3.    The Product labels state, for example, that the Products contain On the Product labels, Defendant prominently states:

(i)    "no harsh ingredients"; that they contain

(ii)    "elemental chlorine-free rayon"; and that they are

_____

[3] https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health

FIRSTSECOND AMENDED CLASS ACTION COMPLAINT CASE NO. 3:24-CV-1337-GPC-KSC

(iii)    "pesticide free";

(iv)    "made without fragrance";

(v)    "gynecologist tested"; and

(vi)    "BPA free" (

(collectively, the "Representations").

17.4.    TheseThe label Representations are likely to lead reasonable consumers to believe that the Products are safe to use and free from harmful elements and ingredients.

18.5.    TheseThe label Representations are misleading based on the lead contained in the Products, which is not disclosed anywhere on the labels.

6.    Reasonable consumers who purchase According to independent scientific testing commissioned by Plaintiff's counsel (as described in detail herein), every size and configuration of Defendant's Products bearing the label Representations and without any disclosure that contains a substantial amount of lead.

7.    The ordinary and expected use of the Products exposes consumers to amounts of lead that exceed the California Proposition 65 Maximum Allowable Dose Level ("MADL") for reproductive toxicity of 0.5 micrograms of lead per day.[4]

8.    Separate and apart from Proposition 65, as acknowledged by the World Health Organization, "[t]here is no level of exposure to lead that is known to be without harmful effects."[5]

_____

[4] This action is not brought pursuant to Proposition 65 but, as set forth herein, is brought pursuant to California's consumer protection laws based on consumer deception due to the mislabeling of the Products. Proposition 65, however, establishes the specific levels of exposure set forth by the California legislature at which "businesses [are required] to provide warnings to Californians about significant exposures to chemicals that cause cancer, birth defects or other reproductive harm." https://oehha.ca.gov/proposition-65#:~:text=What%20is%20Proposition%2065?,into%20sources%20of%20drinking%20water.

[5] https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health

9.    Consumers, including Plaintiff, do not want to purchase tampons containing lead.

10.    There are other menstrual options available to consumers, including organic tampons, that do not contain lead—are misled and deceived. .

~~19.~~11. In order to drive its own profits, however, Defendant misleads consumers about the nature of the Products and deprives consumers of the opportunity to make an informed choice between its Products, which contain lead, and other available menstrual products, which do not.

~~20.~~12. Plaintiff and Class members have suffered economic injury based on their purchase of the Products, which they would not have bought had they known ~~that~~ the ~~Products contain lead~~truth.

## II.    JURISDICTION AND VENUE

~~21.~~13. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

~~22.~~14. This Court has personal jurisdiction over Defendant because Defendant's contacts with the forum are continuous and substantial, and Defendant intentionally availed itself of the markets within California through the sale and distribution of the Products in California and through the privilege of conducting business in California.

~~23.~~15. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant engages in continuous and systematic business activities within the State of California. Moreover, a substantial part of the events and conduct giving rise to the claims alleged herein occurred in this district. *See also* Declaration of Allison Barton Regarding Venue Pursuant to Cal. Civ. Code § 1780(d), attached as Exh. A.

## III.    FACTUAL ALLEGATIONS

## A. **Lead ~~Isis~~ Harmful and Dangerous**

~~24.~~16. Lead affects almost every organ and system in the body and accumulates in the body over time, leading to severe health risks and toxicity, including inhibiting neurological function, anemia, kidney damage, seizures, and in extreme cases, coma and death.[6]

~~25.~~17. The lead contained in the Products ~~is~~may be particularly detrimental to consumer health because the Products are not consumed orally, but instead are intended to be inserted vaginally where the lead can be directly absorbed into the blood stream.

~~26.~~18. In other words, there is no "first-pass metabolism and detoxification via the liver" but instead the lead in the Products may "directly enter[s] systemic circulation."[7]

~~27.~~19. A study addressing Medication Routes of Administration states that the "first pass effect" for oral administration refers to the "drug metabolism whereby the drug concentration is significantly diminished before it reaches the systemic circulation, often due to the metabolism in the liver."[8]

~~28.~~20. By contrast, vaginal administration bypasses the system of veins that transport blood from the digestive tract to the liver.[9]

~~29.~~21. Vaginal administration directly accesses the networks of blood vessels that surround vital organs, including the pelvic organs.[10]

~~30.~~22. Vaginal walls are permeable and allow for efficient absorption, including

---

[6] Wani AL, et al., Lead toxicity: a review, INTERDISCIP TOXICOL. (June 2015), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4961898.

[7] Environmental International 190 (2024) 108849, Tampons as a source of exposure to metal(loid)s, Jenni A. Shearson, et al. (citing Kim and De Jesus, 2022) (hereinafter, "Environmental International").

[8] Kim J, De Jesus O, Medication Routes of Administration, EUROPE PMC (March 2021), available at https://europepmc.org/article/NBK/nbk568677.

[9] Id.

[10] Id.

in absorption tests of certain medications.[11]

31.23. Toxins can pass through the vaginal epithelium and enter systemic circulation.[12]

32.24. Accordingly, if the lead in the Products passes through the vaginal epithelium, it is not diminished or filtered by metabolic function, but rather can be absorbed directly into the bloodstream.

33.25. According to the World Health Organization, "[e]xposure to lead can affect multiple body systems and is particularly harmful to young children and women of child-bearing age."[13]

The

**B. Scientific Testing Demonstrates that Defendant's Products Contain a Substantial Amount of Lead in Excess of the Maximum Allowable Dose**

34.    California's Proposition 65 establishes a Maximum Allowable Dose Level ("MADL") of .5 micrograms ("mcg") of lead per day for reproductive toxicity.[14]

35.    According to independent laboratory testing and analysis, the Products contain .189 mcg of lead per gram of Product.[15]

36.    The Products are sold in various sizes, which have different gram weights.

**1.  *Per day, based on an average number of Plaintiff's Testing Is***

_____

[11] P. van der Biji, et al., Comparative permeability of human vaginal and buccal mucosa to water, Eur J Oral Sci. (Dec. 1997), available at https://pubmed.ncbi.nlm.nih.gov/9469607/; *see also* Environmental International (citing (Patel et al., 1983; Vorontsova et al., 2022).

[12] Environmental International (discussing the toxic shock syndrome outbreak of the 1980s) (citations omitted).

[13] https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health

[14] https://oehha.ca.gov/proposition-65/chemicals/lead-and-lead-compounds.

[15] Based on independent laboratory testing of regular U by KOTEX Click® tampons. The Products at issue are all manufactured by Defendant and contain the same ingredients.

7

*Scientifically Valid*

26.    Plaintiff's counsel commissioned scientific testing of Defendant's Products by an independent laboratory, which holds numerous accreditations, including ISO/IEC 17025:2017 and the FDA Laboratory Accreditation for Analysis of Foods (LAAF).

27.    In July of 2024, the laboratory conducted testing of U by KOTEX Click® Regular tampons ~~used, consumers are exposed to lead in excess of~~.

28.    Following the ~~MADL, irrespective of~~ Court's Order, the laboratory tested Defendant's U by KOTEX Click® Super and Super Plus tampons.

29.    The laboratory conducted testing on homogenous samples of each size of Defendant's Products (*e.g.*, testing was conducted on a homogenous sample of each of Defendant's regular, super, and super plus size tampons).

30.    The testing was conducted using Inductively Coupled Plasma – Mass Spectrometry ("ICP-MS").

31.    ICP-MS is used to test for the presence of heavy metals, and the amount thereof.

32.    ICP-MS is recognized for its high precision and sensitivity in measuring heavy metals, including lead.

33.    The scientific testing described in the Environmental International article, which tested tampons for heavy metals (cited above), used ICP-MS to determine the concentrations of heavy metals in the tested tampons.[16]

34.    In addition, ICP-MS is the approved methodology used by the FDA to test for the presence of heavy metals in food.[17]

_____

[16] *See* Environmental International at 1.

[17] *See e.g.* https://www.fda.gov/food/environmental-contaminants-food/lead-food-and-foodwares#:~:text=In%20addition%2C%20the%20FDA%20has,parts%20per%20billion%20(ppb) (linking to an Elemental Analysis Manual for Inductively Coupled Plasma-Mass Spectrometric Determination)

35.    The results of the scientific testing demonstrate that all of the Products, regardless of variety, contain a substantial amount of lead.

36.    In addition to the Products, Plaintiff's counsel also commissioned the independent, scientific testing of numerous other brands of tampons.

37.    Using the same testing methodology, the same FDA-accredited laboratory tested numerous organic tampons, including Tampax Pure Cotton tampons and L. brand tampons.

37.38.In sharp contrast to the Product testing results—which found substantial amounts of lead in each tested Product used. —the testing of the organic tampons demonstrates that the organic tampons do not contain detectible levels of lead (with the limit of detection set at 0.001).

### 1.2.    Consumers Use Multiple Tampons Per Day

38.39.The Product labels specify that a single tampon should be used "FOR 8 HOURS MAXIMUM".

39.40.Based on the instructioninstructions to use a single tampon for a maximum of 8 hours, consumers will use a minimum of three tampons in a 24-hour period.

40.41.Most consumers of Defendant's Products, however, use an average of more than three tampons in a 24-hour period.

41.42.According to Defendant's ubykotex.com website, "never go longer than 8 hours (preferably 4-8) without changing your product, for reasons of odor, hygiene, and, especially with tampons, health."[18]

42.43.According to the use instructions, consumers will use an average of between three to six Products in a 24-hour period.

### 2.3.    Ordinary Use of Defendant's Products Exposes Consumers to

---

[18] https://www.ubykotex.com/en-us/resources/menstrual-products/absorbency-guide

## Lead in Excess of the MALD

***U by KOTEX Click® Regular.***

43.    The fabric portion of a single U by KOTEX Click® regular tampon weighs an average of 1.633 grams.

44.    Each U by KOTEX Click® regular tampon contains approximately .309 mcg of lead.

45.    If consumers use three U by KOTEX Click® regular tampons in a 24-hour period they are exposed to approximately .927 mcg of lead, which exceeds the MADL.

46.    If consumers use six U by KOTEX Click® regular tampons in a 24-hour period they are exposed to approximately 1.854 mcg of lead, which is almost four times the MADL.

***U by KOTEX Click® Super.***

47.    The fabric portion of a single U by KOTEX Click® super tampon weighs an average of 2.31 grams.

48.    Each U by KOTEX Click® super tampon contains approximately .437 mcg of lead.

49.    If consumers use three U by KOTEX Click® super tampons in a 24-hour period they are exposed to approximately 1.311 mcg of lead, or more than double the MADL.

50.    If consumers use six U by KOTEX Click® super tampons in a 24-hour period they are exposed to approximately 2.622 mcg of lead, which is more than five times the MADL.

***U by KOTEX Click® Super Plus.***

51.    The fabric portion of a single U by KOTEX Click® super plus tampon weighs an average of 2.961 grams.

52.    Each U by KOTEX Click® super plus tampon contains approximately .560 mcg of lead, which exceeds the MADL.

10

53.    If consumers use three U by KOTEX Click® super plus tampons in a 24-hour period they are exposed to approximately 1.679 of lead, which is more than three times the MADL.

54.    If consumers use six U by KOTEX Click® super plus tampons in a 24-hour period they are exposed to approximately 3.358 mcg of lead, which is more than six times the MADL.

44.    OtherThe independent scientific testing commissioned by Plaintiff's counsel, described above, demonstrates that each size of the Products contain lead, as follows:

| TAMPON TYPE TESTED | AVERAGE LEAD PER TAMPON | AVERAGE LEAD PER 3 TAMPONS | AVERAGE LEAD PER 6 TAMPONS |
|---|---|---|---|
| U by KOTEX Click® Regular | .309 mcg lead | .927 mcg lead | 1.854 mcg lead |
| U by KOTEX Click® Super | .376 mcg lead | 1.128 mcg lead | 2.256 mcg lead |
| U by KOTEX Click® Super Plus | .457 mcg lead | 1.371 mcg lead | 2.742 mcg lead |

45.    According to this independent scientific testing, ordinary and expected use of any size of the Products (which, according to Defendant, involves the use of 3-6 tampons per day) exposes consumers to lead in excess of the MADL.

**C. Organic Cotton Tampons Do Not Contain Detectible Levels of Lead**

55.46. Based on the independent scientific testing and analysis described above, other tampons that are not manufactured by Defendant contain such a small amount of lead (if any) that the lead is below the limit of detection.

56.47. According to independent scientific testing and analysis, L. brand tampons

and Tampax pure cotton tampons, which are advertised as containing an 100% organic cotton core, contain such a small amount of lead (if any) that the lead is below the limit of detection.

57.48. In addition, independent scientific testing and analysis of certain other brands of tampons, which are advertised as containing 100% organic cotton, demonstrates that the tampons contain such a small amount of lead (if any) that the lead is below the limit of detection.

58.49. Defendant has the ability to manufacture tampons that do not contain lead.

59.50. Defendant willfully or negligently manufactures the Products such that they contain a detectible, substantial amount of lead.

**D. On information and belief, it costs less for Defendant ~~Fails~~ to ~~Disclose and Materially Omits that~~ manufacture the Products ~~Contain Lead~~**

60. (containing lead) than it would cost for Defendant ~~fails~~ to ~~disclose the lead in the Products in violation of California consumer protection law.~~

61. ~~Defendant's conduct is unlawful, misleading and constitutes a material omission, including because the Products pose a hidden health risk.~~

62.51. ~~Defendant had and has an independent duty to disclose the~~manufacture organic cotton tampons (without lead ~~in the Products based on the unreasonable safety hazard associated with using the Products and/or because the Products are unfit for use.~~).

**D. Reasonable Consumers Are Likley to Be Misled by Defendant's Label Representations**

63. ~~As set forth herein, lead is dangerous to human health, and particularly dangerous based on the manner of use of the Products.~~

64. ~~Based on the lead contained in the Products, Defendant is required to provide a "clear and reasonable" warning to consumers, including by "labeling a consumer product" pursuant to Proposition 65.~~

12

65.    Despite this express requirement, there is no warning on the products.

66.    Although Plaintiff does not bring claims pursuant to Proposition 65, Defendant's violation of Proposition 65 provides a predicate basis for violation of California's Unfair Competition Law, as set forth below.

**E. Reasonable Consumers Are Likely to Be Misled and Deceived by Defendant's Omission that the Products Contain Lead**

67.52. KotexKOTEX tampons are trusted brands and household names.

53.    The following are examples of the box label images of the Products:





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



68.54. As depicted above, Reasonable consumers of Defendant's Products, like

14

Plaintiff, have no reason to suspect or know that the Products contain lead.the following prominent, uniform Representations:

    (i)    "no harsh ingredients";

    (ii)    "elemental chlorine-free rayon";

    (iii)    "pesticide free";

    (iv)    "made without fragrance";

    (v)    "gynecologist tested"; and

    (vi)    "BPA free".

55.    The Representations lead reasonable consumers to believe that the Products are safe to use, including because they are free from potentially harmful substances and ingredients.

56.    The Representations are misleading based on the lead contained in the Products, which Defendant fails to disclose.

57.    The Representations are voluntary advertising statements.

58.    The Representations are not governed or required by any government or FDA regulation or requirement.

59.    Defendant voluntarily makes the Representations on the labels of the Products to appeal to consumers and to increase sales of the Products.

69.60. Defendant knew, or should have known, that the Products contain lead and willfully or intentionally failedmakes the label Representations but fails to disclose this fact to consumersthe lead in the Products.

70.    Defendant owed consumers a duty of care to adequately test its Products for the presence of heavy metals and, if any such metals were found, to remediate or disclose their presence.

71.    Defendant, however, failed to disclose and materially omitted that the Products contain lead.

72.61. The disclosure of lead in the Products would negatively impact

15

Defendant's sales of the Products and its bottom line.

73.62. If consumers knew that the Products contain lead, particularly in the amounts set forth herein, they would not purchase the Products.

74.63. There are other menstrual options besides Defendant's Products available on the market.

75.64. Consumers, however, are deprived of making the informed choice between the Products, which contain lead, and other menstrual products because Defendant fails to disclose the presence of lead in the Products, which do not.

76.65. Plaintiff and reasonable consumers suffered economic injury based on the purchase price of the Products.

77.66. If Plaintiff had known the truth about Defendant's Products, she would not have purchased the Products.

78.67. Plaintiff and Class members were harmed based on money spent to purchase the Products, which they otherwise would not have spent if they had known that the Products contain lead.

**F.A.  Reasonable Consumers Are Likley to Be Misled by Defendant's Label Representations**

79.1.  The following are examples of the box label images of the Products:





~~FIRST~~**SECOND** **AMENDED CLASS ACTION COMPLAINT CASE NO. 3:24-CV-1337-GPC-KSC**



(i)    As depic̶t̶e̶d̶ ̶a̶b̶o̶v̶e̶,̶ ̶t̶h̶e̶ ̶P̶r̶o̶d̶u̶c̶t̶s̶ ̶c̶o̶n̶t̶a̶i̶n̶ ̶t̶h̶e̶ ̶f̶o̶l̶l̶o̶w̶ing Representations: "no
harsh ingredients"; that they contain "elemental chlorine-free rayon"; and
that they are "pesticide free"; "made without fragrance"; "gynecologist
tested"; and "BPA free".

80.    The Representations lead reasonable consumers to believe that the Products
are safe to use because they are free from potentially harmful elements and ingredients.

81.    The Representations are misleading based on the lead contained in the
Products.

82.    The Representations are advertising statements.

8̶3̶.1.    The Representations are not governed by any government or FDA
regulation or requirement.

8̶4̶.1.    Defendant voluntarily makes the Representations on the labels of the
Products to appeal to consumers and to increase sales of the Products.

## IV.    PARTIES

85.68. Plaintiff Allison Barton is a citizen of California who purchased the Products in this judicial district during the class period. Plaintiff's claim is typical of all Class members in this regard.

86.69. The advertising and labeling on the package of the Products purchased by Plaintiff, including the Representations, is typical of the advertising, labeling and representation of the Products purchased by members of the Class.

87.70. The price paid by Plaintiff for the Products is typical of the price paid by members of the Class.

88.71. Defendant Kimberly-Clark Corporation is a Delaware corporation with its principal place of business in Irving, Texas, and is a citizen of Texas.

89.72. Defendant and its agents manufacture, market, distribute, label, promote, advertise and sell the Products.

90.73. At all times material hereto, Defendant was conducting business in the United States, including in California, through its services as a manufacturer and supplier to various stores in California and by, among other things, maintaining agents for the customary transaction of business in California.

91.74. Defendant and its agents promoted, marketed and sold the Products at issue in this jurisdiction and in this judicial district.

92.75. The deceptive acts and omissions giving rise to Plaintiff's claims occurred in this jurisdiction and in this judicial district.

93.76. The unfair, unlawful, deceptive, and misleading advertising and labeling of the Products was prepared and/or approved by Defendant and its agents, and was disseminated by Defendant and its agents through labeling and advertising containing the misrepresentations and omission alleged herein.

### A. **Plaintiff Was Misled and Injured by Defendant's Misconduct**

94.77. Plaintiff purchased the Products on numerous occasions during the Class Period, including in the following sizes: regular and super.

95.78. To the best of her recollection, Plaintiff purchased the Products from CVS, Target and Rite Aid stores located in this judicial district.

96.79. The price paid by Plaintiff for the Products varied based on the number of tampons included in the box, however, to the best of her recollection, the prices ranged from approximately $7.00 to $13.99 per box.

97.80. In addition to other purchases, on March 17, 2023, Plaintiff purchased a multipack of regular and super Products (30 count) from a Target store located in San Diego, California for $8.99.

98.81. Plaintiff purchased the Products most recently from a Rite Aid store in San Diego in or around June of 2024.

99.82. Plaintiff purchased the Products for personal use.

100.83.    At the time of purchase, Plaintiff viewed the label box images, including the Representations.

101.84.    At the time of purchase, Plaintiff did not know, and had no reason to know, that the Products contain lead.

102.85.    Acting reasonably under the circumstances, Plaintiff relied on the reputation of the Products and the Representations, and believed that the Products would be free from harmful effect and safe to use.potentially harmful ingredients or elements (such as lead)..

103.86.    Unbeknownst to Plaintiff at the time of purchase, the Products contain lead.

104.87.    Defendant materially omitted the factfailed to disclose that the Products contain lead.

105.88.    Had Plaintiff known at the time of purchase that the Products contain lead, Plaintiff would not have purchased the Products.

106.89.    Defendant continues to sell the misbranded Products.

107.90.    Plaintiff would like to purchase the Products in the future if the Products did not contain lead.

108.91.    Plaintiff continues to suffer harm because she is not able to rely on the labeling and advertising of the Products for their truth, and thus is unable to determine whether she can purchase the Products in the future.

109.92.    Unless Defendant is enjoined from failing to disclose the presence of lead inmisrepresent the Products in the future, Plaintiff and consumers will not be able to reasonably determine whether the lead in the Products has been addressaddressed and remedied.

110.93.    Accordingly, Plaintiff's legal remedies are inadequate to prevent future injuries.

## V.    CLASS DEFINITION AND CLASS ALLEGATIONS

111.94.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself, on behalf of all others similarly situated, and as a member of the Class defined as follows:

> All citizens of California who, within four years prior to the filing of the initial Complaint, purchased Defendant's Products in the State of California and who do not claim any personal injury from using the Products (the "Class").

112.95.    Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has a controlling interest; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and their staff, and persons within the third degree of consanguinity to such judicial officer.

113.96.    Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

114.97.    This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

115.98.    **Numerosity**:  Members of the Class are so numerous that joinder of all members is impracticable.  Upon information and belief, the Class consists of hundreds of thousands of purchasers throughout the State of California.  Accordingly, it would be impracticable to join all members of the Class before the Court.

116.99.    **Common Questions Predominate:**    There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

- Whether Defendant's ~~omission and failure to disclose that the Products contain lead is~~Representations are likely to ~~be material to~~mislead reasonable consumers;

- ~~Whether Defendant's omission and failure to disclose that the Products contain lead is likely to deceive reasonable consumers;~~

- Whether Defendant engaged in unlawful, unfair or deceptive business practices by advertising, labeling and selling the Products;

- Whether Defendant violated California Bus. & Prof. Code § 17200, *et seq.*; Cal. Bus. & Prof. Code § 17500, *et seq.*; and/or the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*;

- Whether Plaintiff and the Class have sustained damage as a result of Defendant's unlawful conduct; and

- The proper measure of damages sustained by Plaintiff and the Class.

117.100.   **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class she seeks to represent because Plaintiff, like the Class members, purchased Defendant's Products. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct. Plaintiff's and Class member's claims arise from the same practices and course of conduct and are based on the same legal theories.

118.101.   **Adequacy:** Plaintiff is an adequate representative of the Class she seeks to represent because her interests do not conflict with the interests of the members of the Class Plaintiff seeks to represent. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

119.102.   **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a.   The claims presented in this case predominate over any questions of law or fact, if any exists at all, affecting any individual member of the Class;

b.   Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

c.   Given the size of individual Class members' claims, few, if any, members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent members

23

have no substantial interest in individually controlling the prosecution of individual actions;

d.    When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e.    This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the Class can seek redress for the harm caused to them by Defendant.

120.103.   Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

121.104.   The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are met as questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

122.105.   Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Unfair and Unlawful Business Acts and Practices**
**(Business and Professions Code § 17200, *et seq.*)**
**(*for Plaintiff and the Class*)**

123.106.   Plaintiff re-alleges and incorporates by reference the allegations

24

contained in the preceding paragraphs of this complaint, as though fully set forth herein.

124.107.    Defendant's conduct constitutes an unfair business act and practice pursuant to California Business & Professions Code §§ 17200, *et seq.* (the "UCL").  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . .".".."

125.108.    Plaintiff brings this claim seeking restitution or disgorgement of the amounts Defendant acquired through the unfair, unlawful, and fraudulent business practices, as described herein; and injunctive relief to stop Defendant's misconduct, as described herein.

126.109.    Defendant's knowing conduct, as alleged herein, constitutes an "unfaira "fraudulent" and/or "fraudulentunfair" business practice, as set forth in California Business & Professions Code §§ 17200-17208.

### *Defendant's Conduct Constitutes a Fraudulent Business Practice*

127.110.    Defendant's conduct was and continues to be unfair andconstitutes a fraudulent business practice because, directly or through its agents and employees, Defendant omitted and failed to disclose that the Products contain lead. as set forth herein, consumers are likely to be deceived by Defendant's Representations.

128.111.    Defendant was and is aware that its omission isRepresentations are material to consumers.

129.112.    Defendant was and is aware that its omission isRepresentations are misleading based on the Representations made on the Product labels, as described and depicted herein.

130.113.    Defendant had an improper motive—to derive financial gain at the expense of accuracy or truthfulness—in its practices related to the labeling and advertising of the Products.

FIRSTSECOND AMENDED CLASS ACTION COMPLAINT CASE NO. 3:24-CV-1337-GPC-KSC

131.114.     There were reasonable alternatives available to Defendant to further Defendant's legitimate business interests, other than the conduct described herein.

~~Defendant's misrepresentation and omission~~*Defendant's Conduct Constitutes an Unfair Business Practice*

115.   Defendant's conduct violates both the "Immoral Test" and the "Balancing Test" under California law, which are used to analyze whether conduct is "unfair".

116.   Defendant's conduct violates the Immoral Test because Defendant intentionally makes the Representations to increase sales of the Products.

117.   Defendant was and is aware that its Representations are misleading, as described herein.

118.   Defendant's conduct is substantially injurious because consumers purchase the misrepresented Products in reliance on Defendant's Representations.

119.   Defendant's conduct also violates the "Balancing Test" because the utility of Defendant's conduct in labeling the Products with the Representations is outweighed by the harm to consumers.

120.   As set forth herein, the Representations are optional, voluntary advertising statements.

121.   Defendant makes the Representations to increase sales of the Products and to the detriment of consumers, who are misled and deceived.

122.   Consumers are directly harmed by Defendant's conduct in that they would not have purchased the Products if they had known the truth.

123.   Defendant's conduct is also substantially injurious because it prevents consumers from making informed purchasing decisions.

124.   In addition, Defendant's conduct is injurious to competition because Defendant's misrepresentation of its Products prevents consumers from making an informed choice between its Products and other similar products, which are not misrepresented.

26

125.    Defendant had an improper motive—to derive financial gain at the expense of accuracy or truthfulness—in its practices related to the labeling and advertising of the Products.

126.   There were reasonable alternatives available to Defendant to further Defendant's legitimate business interests, other than the conduct described herein.

127.   Plaintiff and members of the Class could not have reasonably avoided injury. Defendant's uniform Representations regarding the Products were likely to deceive, and Defendant knew or should have known that its Representations were misleading.

128.   Plaintiff purchased the Products with the reasonable belief that the Products were safe and did not contain harmful elements or ingredients, and without knowledge that the Products in fact contain lead.

### *Defendant's Conduct Constitutes an Unlawful Business Act*

132.129.    Defendant's misrepresentation of material facts, as set forth herein, also constitute an "unlawful" practice because they violate California Civil Code §§ 1572, 1573, 1709, 1710, 1711, and 1770 and the laws and regulations cited herein, as well as the common law.[19]

133.130.    Defendant's conduct in making the omissionRepresentations described herein, in the absence of any lead disclosure, constitutes a knowing failure to

---

[19] The California Civil Code Sections prohibit the following conduct: (i) § 1572: actual fraud, including by suggestion of an untrue fact or suppression of that which is true; (ii) § 1573: constructive fraud, including by breach of duty "by misleading another to his prejudice" and in any act or omission that the law declares to be fraudulent; (iii) §§ 1709-1711: willfully deceiving another or a particular class of persons "with intent to induce him to alter his position to his injury or risk", including by suggestion of a fact that is not true or suppression of a fact by one who is bound to disclose it, or by giving information "of other facts which are likely to mislead for want of communication of that fact"; (iv) § 1770: listing proscribed practices, including unfair methods of competition and unfair or deceptive acts and practices, as described herein.

FIRSTSECOND **AMENDED CLASS ACTION COMPLAINT CASE NO. 3:24-CV-1337-GPC-KSC**

adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors.

134.131.    This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair business practice under California Business & Professions Code §§ 17200-17208.

135.    In addition, Defendant's omission that the Products contain lead constitutes an "unlawful" practice because, as described herein, the Product labels fail to comply with California's Proposition 65.

136.    Accordingly, Proposition 65 provides a predicate violation for a violation of the UCL.

137.    Plaintiff and members of the Class could not have reasonably avoided injury.    Defendant's uniform Representations and material omission regarding the Products were likely to deceive, and Defendant knew or should have known that its Representations and omission were misleading.

138.    Plaintiff purchased the Products with the reasonable belief that the Products were safe and did not contain harmful elements or ingredients, and without knowledge of Defendant's material omission that the Products contain lead.

139.132.    Plaintiff and members of the Class have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the monies paid to Defendant for the Products, interest lost, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and Class members.

140.133.    As a result of the business acts and practices described above, Plaintiff and members of the Class are entitled to such Orders and judgments that may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendant.

FIRSTSECOND AMENDED CLASS ACTION COMPLAINT CASE NO. 3:24-CV-1337-GPC-KSC

141.134.    Pursuant to Civil Code § 3287(a), Plaintiff and the Class are further entitled to pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class are entitled to interest in an amount according to proof.

### *No Adequate Remedy at Law*

135.   Plaintiff's legal remedy is inadequate.

136.   Disgorgement serves to make illegal conduct unprofitable. Thus, disgorgement uniquely serves as a deterrent for future, unlawful conduct by Defendant.

137.   In addition, Plaintiff's request for equitable relief goes beyond Plaintiff's request for legal damages.

138.   Disgorgement is based on Defendant's gain, rather than Plaintiff's loss.

139.   Accordingly, as a measure of Defendant's unjust enrichment or ill-gotten gains, disgorgement permits recovery of interest.

140.   In addition, disgorgement can be readily measured as a sum certain according to Defendant's financial records while legal damages are generally subject to complex and costly expert valuation.

141.   In addition, the reach of equitable relief may extend beyond that of legal damages.  While legal damages under the CLRA are limited by statute (*e.g.*, to persons who purchase for personal, family or household purposes) equitable relief under the UCL is not statutorily limited.

142.   As a result of the business acts and practices described above, pursuant to § 17203, Plaintiff and members of the Class are entitled to an order enjoining such future wrongful conduct on the part of Defendant.

143.   As set forth herein, Plaintiff's remedy at law is inadequate to allow Plaintiff to determine whether the labeling and advertising of the Products has been remediated and thus whether she can purchase the Products in the future.

## SECOND CAUSE OF ACTION
### Deceptive Advertising Practices
### (California Business & Professions Code §§ 17500, *et seq.*)
### (*for Plaintiff and the Class*)

143.144.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

144.145.    California Business & Professions Code § 17500 prohibits "unfair, deceptive, untrue or misleading advertising . . .."

145.146.    Defendant violated § 17500 by making the Representations and failing to disclose that the Products contain lead; and by representing that the Products possess characteristics and value that they do not have.

146.147.    Defendant's deceptive practices were designed to induce reasonable consumers like Plaintiff to purchase the Products.

147.148.    Defendant's uniform Representations and material omission that the Products contain lead were likely to deceive, and Defendant knew or should have known that they were misleading.

148.149.    Plaintiff purchased the Products in reliance on the Product labeling, including that the Product labeling was accurate as alleged herein, and without knowledge of Defendant's misrepresentations and omission..

149.150.    Plaintiff and members of the Class have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the price paid to Defendant for the Products, interest lost, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and Class members.

150.151.    The above acts of Defendant were and are likely to deceive reasonable consumers in violation of § 17500.

151.152.    In making the Representations and omission alleged herein, Defendant knew or should have known that the Representations and omission were

30

deceptive and/or misleading, and acted in violation of § 17500.

152.153.    As a direct and proximate result of Defendant's unlawful conduct in violation of § 17500 Plaintiff and members of the Class request an Order requiring Defendant to disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendant by means of such acts of false advertising, as well as interests and attorneys' fees.

### *No Adequate Remedy at Law*

154.    Plaintiff's legal remedy is inadequate.

155.    Disgorgement serves to make illegal conduct unprofitable. Thus, disgorgement uniquely serves as a deterrent for future, unlawful conduct by Defendant.

156.    In addition, Plaintiff's request for equitable relief goes beyond Plaintiff's request for legal damages.

157.    Disgorgement is based on Defendant's gain, rather than Plaintiff's loss.

158.    Accordingly, as a measure of Defendant's unjust enrichment or ill-gotten gains, disgorgement permits recovery of interest.

159.    In addition, disgorgement can be readily measured as a sum certain according to Defendant's financial records while legal damages are generally subject to complex and costly expert valuation.

160.    In addition, the reach of equitable relief may extend beyond that of legal damages.  While legal damages under the CLRA are limited by statute (*e.g.*, to persons who purchase for personal, family or household purposes) equitable relief under the UCL is not statutorily limited.

153.161.    As a direct and proximate result of Defendant's unlawful conduct in violation of § 17500, Plaintiff and members of the Class request an Order pursuant to § 17535 enjoining such future wrongful conduct on the part of Defendant.

162.    As set forth herein, Plaintiff's remedy at law is inadequate to allow Plaintiff to determine whether the labeling and advertising of the Products has been remediated

FIRSTSECOND AMENDED CLASS ACTION COMPLAINT CASE NO. 3:24-CV-1337-GPC-KSC

and thus whether she can purchase the Products in the future.

### THIRD CAUSE OF ACTION
### Consumer Legal Remedies Act
### (Cal. Civ. Code § 1750, *et seq.*)
### (*for Plaintiff and the Class*)

154.163.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

155.164.    Plaintiff brings this action pursuant to California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*. ("CLRA").

156.165.    The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

157.166.    The Products are "goods," as defined by the CLRA in California Civil Code §1761(a).

158.167.    Defendant is a "person," as defined by the CLRA in California Civil Code §1761(c).

159.168.    Plaintiff and members of the Class are "consumers," as defined by the CLRA in California Civil Code §1761(d).

160.169.    Purchase of the Products by Plaintiff and members of the Class are "transactions," as defined by the CLRA in California Civil Code §1761(e).

161.170.    Defendant violated Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have" by making the Representations and materially omitting and failing to disclose that the Products contain lead, as described herein.

162.171.    Defendant also violated section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . if they are of another" by

32

making the Representations and materially omitting and failing to disclose that the Products contain lead., as described herein.

163.172.    In addition, Defendant violated section 1770(a)(9) by advertising the Products "with intent not to sell them as advertised" in that the Products are misrepresented and misbranded as described herein.

164.173.    Defendant's uniform Representations and omission regarding the Products were likely to deceive, and Defendant knew or should have known that its Representations and omission were deceptive and/or misleading.

165.174.    Plaintiff and members of the Class relied on Defendant's unlawful conduct and could not have reasonably avoided injury.

166.175.    Plaintiff and members of the Class were unaware of the existence of facts that Defendant suppressed and failed to disclose, including that the Products contain lead.

167.176.    Plaintiff and members of the Class would not have purchased the Products had they known the truth about the lead in the Products.

168.177.    Plaintiff and members of the Class have been directly and proximately injured by Defendant's conduct.

169.178.    Such injury includes, but is not limited to, the purchase price of the Products and/or the price of the Products at which they were offered.

170.179.    Moreover, Defendant's conduct is malicious, fraudulent, and/or wanton in that Defendant intentionally misled and withheld material information from consumers, including to increase the sale of the Products.

171.180.    Pursuant to California Civil Code § 1782(a), on July 24, 2024, Plaintiff on her own behalf, and on behalf of members of the Class, provided notice to Defendant of the alleged violations of the Consumer Legal Remedies Act by notice letter setting forth Plaintiff's claims.

FIRSTSECOND AMENDED CLASS ACTION COMPLAINT CASE NO. 3:24-CV-1337-GPC-KSC

172.181.    On July 30, 2024, Plaintiff on her own behalf, and on behalf of members of the Class, filed the original Class Action Complaint in this case, setting forth Plaintiff's claims. *See* Doc. No. 1.

173.182.    Despite giving Defendant more than 30-days from the date of the notification letter and original Class Action Complaint to provide appropriate relief for violations of the CLRA, Defendant has failed to provide any such relief. As such, Plaintiff seeks compensatory, monetary and punitive damages, and requests that this Court enter such Orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair business practices, and for such other relief as is provided in California Civil Code § 1780 and in the Prayer for Relief.

174.183.    As a direct and proximate result of Defendant's unlawful conduct in violation of the CLRA, Plaintiff and members of the Class request an Order pursuant to § 1780 enjoining such future wrongful conduct on the part of Defendant.

## **PRAYER**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

A.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the Class; and naming Plaintiff's attorneys as Class Counsel to represent the Class;

B.    For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

C.    For an order awarding, as appropriate, compensatory and monetary damages to Plaintiff and the Class;

D.    For an order awarding injunctive relief;

E.      For an order awarding attorneys' fees and costs;

F.      For an order awarding pre-and post-judgment interest; and

G.      For such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.


Dated:  ~~September 4, 2024~~March 10, 2025             Respectfully submitted,

KAMBERLAW, LLP


By:   *s/ Naomi B. Spector*
        NAOMI B. SPECTOR

3451 Via Montebello, Ste.192-212
Carlsbad, CA 92009
Phone: 310.400.1053
Fax: 212.202.6364
Email: nspector@kamberlaw.com

~~FIRST~~SECOND AMENDED CLASS ACTION COMPLAINT CASE NO. 3:24-CV-1337-GPC-KSC