TIMOTHY W. LOOSE, SBN 241037
   tloose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

Attorneys for Defendant
KIMBERLY-CLARK CORPORATION

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLISON BARTON, individually, and on behalf of others similarly situated,<br><br>       Plaintiff,<br><br>   v.<br><br>KIMBERLY-CLARK CORPORATION,<br><br>       Defendant. | CASE NO. 3:24-cv-1337-GPC-KSC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT KIMBERLY-CLARK CORPORATION'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Date:  June 13, 2025<br>Time:  1:30 p.m.<br>Courtroom:  2D<br>Judge:  Hon. Gonzalo P. Curiel |

# TABLE OF CONTENTS

**Pages**

INTRODUCTION ...................................................................................... 1

BACKGROUND ......................................................................................... 3

   I. ........ Kimberly-Clark Corporation's U by KOTEX Tampons. ................................. 3

   II. ...... Plaintiff Brings This Action on the Heels of a Research Article About Tampons in General............................................................. 4

   III...... The Court Dismisses the First Amended Complaint With Leave to Amend and Plaintiff Files a Second Amended Complaint. .......................... 5

ARGUMENT ............................................................................................. 6

   I. ........ The SAC Does Not Cure the Pleading Deficiencies the Court Identified......................................................................................... 6

      A. ... Plaintiff Fails to Allege With Particularity That the Products She Bought Contain Lead. ............................................. 7

      B..... Plaintiff Fails to Allege With Particularity That the Products She Bought Exposed Her to Unsafe Amounts of Lead...................... 10

      C..... Plaintiff Fails to Allege With Particularity That the Products She Bought Exposed Her to A Risk of Exposure and Harm. 13

   II. ...... Plaintiff Still Fails to State the Elements of Her Statutory Claims. ............... 15

      A. ... Plaintiff Fails to Allege That Defendant's Representations Are Likely to Mislead Reasonable Consumers..................................... 15

      B..... Plaintiff Fails to Allege the Unfair and Unlawful Prongs of a UCL Claim. ................................................................. 19

   III...... Plaintiff's Equitable Claims Should Be Dismissed. ..................................... 21

   IV...... The Second Amended Complaint Should Be Dismissed With Prejudice. ...................................................................................... 23

CONCLUSION............................................................................................ 23

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Avedisian v. Mercedes-Benz USA, LLC,*
43 F. Supp. 3d 1071 (C.D. Cal. 2014) ............................................................... 15, 19

*Barnes v. Nat. Organics, Inc.,*
2022 WL 4283779 (C.D. Cal. Sept. 13, 2022) ......................................................... 17

*Barton v. Kimberly-Clark Corp.,*
2025 WL 486316 (S.D. Cal. Feb. 13, 2025)
..........................................................5, 6, 7, 8, 9, 10, 11, 12, 17, 18, 19, 20, 21, 22

*Bodle v. Johnson & Johnson Consumer Inc.,*
2022 WL 18495043 (N.D. Cal. Feb. 24, 2022) ......................................................... 8

*Brown v. Madison Reed, Inc.,*
622 F. Supp. 3d 786 (N.D. Cal. 2022),
*aff'd,* 2023 WL 8613496 (9th Cir. Dec. 13, 2023) ................................................. 16

*Carvalho v. Equifax Info. Servs., LLC,*
629 F.3d 876 (9th Cir. 2010) ..................................................................................... 23

*Fahey ex rel. D.C. v. Deoleo USA, Inc.,*
2018 WL 5840664 (D.D.C. Nov. 8, 2018) ............................................................. 8, 9

*Dalewitz v. Procter & Gamble Co.,*
2023 WL 6215329 (S.D.N.Y. Sept. 22, 2023) ......................................................... 10

*Davidson v. Sprout Foods,*
106 F.4th 842 (9th Cir. 2024) ............................................................................. 13, 15

*Fid. Fin. Corp. v. Fed. Home Loan Bank of San Francisco,*
792 F.2d 1432 (9th Cir. 1986) ................................................................................... 23

*Gaminde v. Lang Pharma Nutrition, Inc.,*
2019 WL 1338724 (N.D.N.Y. Mar. 25, 2019) ......................................................... 9

*In re GlenFed, Inc. Sec. Litig.,*
42 F.3d 1541 (9th Cir. 1994) ....................................................................................... 6

*Grausz v. Hershey Co.,*
713 F. Supp. 3d 818 (S.D. Cal. 2024) ..................................................................... 13

*Greer v. Strange Honey Farm,*
LLC, 114 F.4th 605 (6th Cir. 2024) ......................................................................... 10

*Guzman v. Polaris Indus. Inc.,*
49 F.4th 1308 (9th Cir. 2022), *cert. denied sub nom. Polaris Indus.
Inc. v. Albright,* 143 S. Ct. 2612 (2023) ................................................................. 21

Gibson, Dunn &
Crutcher LLP

*Hayden v. Bob's Red Mill Nat. Foods, Inc.*,
    2024 WL 1643696 (N.D. Cal. Apr. 16, 2024) .................................................. 12, 16

*Hoey v. Sony Elecs. Inc.*,
    515 F. Supp. 2d 1099 (N.D. Cal. 2007) ........................................................ 18

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ..................................................................... 6

*Kenney v. Fruit of the Earth, Inc.*,
    2023 WL 3565076 (S.D. Cal. Apr. 3, 2023) ................................................ 21

*Krystofiak v. BellRing Brands, Inc.*,
    737 F. Supp. 3d 782 (N.D. Cal. June 14, 2024) ......................................... 12

*Lowe v. Edgewell Pers. Care Co.*,
    711 F. Supp. 3d 1097 (N.D. Cal. 2024) ....................................................... 9

*Lurenz v. Coca-Cola Co.*,
    2024 WL 2943834 (S.D.N.Y. June 10, 2024) ........................................... 7, 9

*Miller v. Philips N. Am. LLC*,
    2025 WL 582160 (N.D. Cal. Feb. 20, 2025) .............................................. 16

*Muldoon v. DePuy Orthopaedics, Inc.*,
    2025 WL 604970 (N.D. Cal. Feb. 25, 2025) .............................................. 14

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993) ......................................................................... 20

*In re Pac. Mkt. Int'l, LLC, Stanley Tumbler Litig.*,
    2025 WL 241084 (W.D. Wash. Jan. 17, 2025) ........................... 3, 12, 14, 15, 19

*In re Plum Baby Food Litig.*,
    2024 WL 1354447 (N.D. Cal. Mar. 28, 2024) ............................................ 21

*ProconGPS, Inc. v. Star Sensor LLC*,
    2011 WL 5975271 (N.D. Cal. Nov. 29, 2011) ........................................... 20

*Renn v. Otay Lakes Brewery, LLC*,
    2024 WL 331616 (S.D. Cal. Jan. 29, 2024) ........................................... 21, 23

*Rodriguez v. Equal Exch., Inc.*,
    2024 WL 1421971 (S.D. Cal. Mar. 31, 2024) ......................................... 10, 21

*Rodriguez v. Mondelez Glob. LLC*,
    703 F. Supp. 3d 1191 (S.D. Cal. 2023) ...................................................... 13

*Scheibe v. Performance Enhancing Supplements, LLC*,
    2023 WL 5444644 (S.D. Cal. Aug. 23, 2023) ............................................ 22

*Sharma v. Volkswagen AG*,
    524 F. Supp. 3d 891 (N.D. Cal. 2021) ....................................................... 22

iii

Gibson, Dunn &
Crutcher LLP

*Shay v. Apple Inc.*,
  2021 WL 1733385 (S.D. Cal. May 3, 2021) ............................................................. 21

*Shuman v. SquareTrade Inc.*,
  2021 WL 5113182 (N.D. Cal. Nov. 3, 2021) ........................................................... 22

*Simon v. Starbucks Corp.*,
  2010 WL 11597516 (C.D. Cal. Dec. 2, 2010) ......................................................... 18

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ................................................................................. 21

*Toombs v. Leone*,
  777 F.2d 465 (9th Cir. 1985) ................................................................................. 19

*In re Trader Joe's Co. Dark Chocolate Litigation*,
  726 F. Supp. 3d 1150 (S.D. Cal. 2024) ................................................... 12, 13, 17

*Trammel v. KLN Enters., Inc.*,
  2024 WL 4194794 (S.D. Cal. Sept. 12, 2024) ......................................................... 8

*W. Pac. Elec. Co. Corp. v. Dragados/Flatiron*,
  534 F. Supp. 3d 1209 (E.D. Cal. 2021) ................................................................. 19

*Wallace v. ConAgra Foods, Inc.*,
  747 F.3d 1025 (8th Cir. 2014) ............................................................................ 9, 10

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ................................................................................. 15

*Wright v. Or. Metallurgical Corp.*,
  360 F.3d 1090 (9th Cir. 2004) ............................................................................... 11

**Regulations**

16 C.F.R. § 260.1(d) .................................................................................................. 16

16 C.F.R. § 260.9 ....................................................................................................... 16

16 C.F.R. § 260.9(c) ............................................................................................... 3, 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

### INTRODUCTION

In her prior pleading, Plaintiff failed to allege facts showing there were any concerns with the particular U by KOTEX Click® tampons she bought. Rather than submit her own purchases for testing, Plaintiff relied on vague allegations about testing performed on a different tampon that she never bought or saw. Based on the failure to allege facts connecting the theory of the case to Plaintiff's actual purchased product, this Court granted Defendant Kimberly-Clark Corporation's motion to dismiss, and provided Plaintiff leave to attempt to fill in the gaps the Court identified. In response, Plaintiff has still not provided any testing results of the tampons she purchased. Instead, she continues to rely on testing of other tampons, and adds in conclusory assertions that this testing is "representative" and done by an "accredited" "independent lab." These changes do not and cannot cure the core problem: Plaintiff has not alleged facts connecting the testing upon which the entire case relies to her experience. Nor can she; Plaintiff's current complaint confirms that the testing results vary significantly, and cannot be extrapolated to non-tested products. For example, the prior complaint simply assumed that the results of testing one regular absorbency tampon could be applied to the super and super plus tampons. But when Plaintiff tested a super tampon and a super plus tampon, they had 16% and 22% less lead, respectively, than she previously alleged were in those absorbencies.

Plaintiff has not provided the facts the Court held were lacking, and it should dismiss this case with prejudice for these reasons:

*First*, Plaintiff must plead with particularity the facts about her purchases that give rise to a claim. All she alleges is that she purchased regular and super absorbencies of U by KOTEX Click® tampons. Like its predecessors, the Second Amended Complaint then goes on a lengthy discussion of testing results and academic literature, skipping over the fact that Plaintiff never had this testing or analysis done on her *own* products. That gap is especially critical in a case like this one, which focuses on trace levels of an alleged background substance (lead), rather than on some core product design or

1

Gibson, Dunn & Crutcher LLP

ingredient that would not vary from product to product. For that very reason, courts have dismissed cases like this one, where the products Plaintiff purchased were not tested. *See infra* pp. 7–10.

*Second*, Plaintiff has not pleaded any facts to permit an inference that the testing of other products can serve as a basis for drawing conclusions about her products. Rather than plead particular details about the testing of these other products—such as the identity and qualifications of the testers, the number of samples used, the lot numbers of the tested tampons, the purchase date, the use of any controls to rule out false positives— or attach the specific testing results, the Second Amended Complaint lobs a bevy of additional conclusory assertions that the lab used is "accredited," "independent," and took a "representative," "homogenous" sample. Making a series of additional conclusory assertions is no substitute for the factual detail that the Court held was lacking. And the absence of these facts illustrates why Plaintiff cannot connect the conclusions from the alleged testing to the tampons she purchased. The Court previously recognized that testing on a random regular absorbency tampon is not indicative of whether any lead is in the regular absorbency tampons that Plaintiff bought, yet in the Second Amended Complaint, Plaintiff merely repeats the same error by testing random super and super plus absorbencies approximately a year after the purchases in question. None of this testing is sufficient to show that the tampons Plaintiff bought had lead present in the same quantities as in the allegedly tested products, or that they had any level of lead at all. That error is compounded when it appears that the tested tampons came from a different time, different location, different lot, and from a different set of raw materials than the tampons she purchased.

*Third*, even if Plaintiff had submitted her own tampons for testing, and got the detection levels she desires, the claims still would fail. Plaintiff has not alleged anything showing that she was actually exposed to harmful amounts of lead. Nor has she shown that the alleged background amounts of lead could cause harm under any circumstances. Without these allegations, Plaintiff cannot allege that she was materially deceived when

Gibson, Dunn & Crutcher LLP

making her purchases.  *See In re Pac. Mkt. Int'l, LLC, Stanley Tumbler Litig.*, 2025 WL 241084, at \*5–6 (W.D. Wash. Jan. 17, 2025).  That is especially so when reasonable consumers know that small amounts of lead can be present in plants and raw materials from the environment, such that the FTC has said that the mere presence of those substances does not create a risk of deception or other harm.  *See* 16 C.F.R. § 260.9(c).

*Finally*, Plaintiff's equitable claims should be dismissed because she still does not explain why she lacks an adequate remedy at law:  she seeks CLRA damages and claims an economic injury solely in the form of money paid for the products.  That can be fully remedied by a monetary award, which is a hallmark example of an adequate legal remedy.  Moreover, because the Court cannot issue an injunction requiring the product composition change Plaintiff desires, there is no basis for her to seek injunctive relief.

Despite amending her complaint twice, Plaintiff remains unable to state a claim for relief.  The Court should therefore dismiss this case in its entirety with prejudice.

## BACKGROUND

### I.    Kimberly-Clark Corporation's U by KOTEX Tampons.

Defendant Kimberly-Clark manufactures and sells U by KOTEX Click® compact tampons (the "Products") in three absorbencies—regular, super, and super plus.  ECF 25 ("SAC") ¶ 2 n.1.  Defendant has manufactured the tampons for decades, and earned the trusted support of the millions of women who use them on a regular basis.  Plaintiff is one such consumer—she alleges that she purchased "a multipack of regular and super Products" on multiple occasions, most recently in June 2024.  *Id.* ¶¶ 80–81.

The Products go through careful third-party review and testing before being marketed and sold to the public.  *See* Loose Decl., Ex. 1.  This includes Oeko-Tex Standard 100 certification, which tests for the presence of substances like lead.  *See* Loose Decl., Ex. 2.  As medical devices, they are also regulated by the FDA.  *See* Loose Decl., Ex. 1.  The mandatory premarket testing includes "assess[ments] for safety," compliance with FDA standards for medical devices that contact the human body, and the "[b]iocompatibility" of the Products with human contact.  *Id.* at 11–12.  Defendant's

testing has revealed no questions of safety or effectiveness.  *Id.* at 12.  The FDA also has conducted an independent literature review of existing studies regarding allegations of lead in tampons and concluded that there are no safety concerns, and no reasons to discontinue tampon usage.  *See* Loose Decl., Ex. 3 at 16; *see also* Loose Decl., Ex. 4 at 45.  The FDA likewise noted that the existing studies do not address "how much, if any, of the contaminants identified are released from the tampon or absorbed through the vagina," and the agency's bench study regarding whether heavy metals may be released from tampons and absorbed by the body under ordinary use is ongoing.  Loose Decl., Ex. 3 at 16.

The front and back of the Products' packaging contains basic information on sizing, absorbency ranges, and an ingredients list.  *See* SAC ¶ 53.  The packaging supplements this information with advertising statements on the side panels that the Products have "'no harsh ingredients'; contain 'elemental chlorine-free rayon'; are 'pesticide free'; 'made without fragrance'; 'gynecologist tested'; and 'BPA free.'"  *Id.*; *id.* ¶¶ 3, 54.  There are no representations about lead on the tampon boxes.

## II.    Plaintiff Brings This Action on the Heels of a Research Article About Tampons in General.

In June 2024, researchers published an article discussing whether tampons could generally be regarded as a potential source of heavy metal exposure.  *See* Loose Decl. Ex. 5; *see also* SAC ¶ 18 n.5.  The article—which does not mention Defendant or U by KOTEX—reached no conclusions about specific tampon brands, or safety, and cautioned that "no risk assessments have investigated vaginal exposure to metals," such that "future studies are necessary to assess whether metals can leach out of tampons and become bioaccessible for vaginal absorption."  Loose Decl. Ex. 5 at 78.  Because the article did not find that any lead was migrating out of the tampons, it declined to "speculate on potential harm to the health of menstruators."  *Id.*  It likewise acknowledged that "this study does not provide information about potential bio-accessibility of tampon metals and thus [it] cannot estimate health risks (if any) from

tampon use"—that is, the study did not determine whether any lead would have left the tampon, or if it was capable of being absorbed into the body. *Id.*

About a month later, Plaintiff filed this putative class action claiming that Defendant's tampons contain lead and "present[] an unreasonable safety hazard" to consumers. ECF 1 (initial complaint) ¶¶ 1, 9. Plaintiff then filed a First Amended Complaint, adding a claim for damages under the CLRA, but largely leaving the balance of the original pleading unchanged. ECF 8 (FAC).

Defendant filed a motion to dismiss the First Amended Complaint, which was granted in part and denied in part, with leave to amend. ECF 11; *Barton v. Kimberly-Clark Corp.*, 2025 WL 486316, at *17 (S.D. Cal. Feb. 13, 2025).

## III. The Court Dismisses the First Amended Complaint With Leave to Amend and Plaintiff Files a Second Amended Complaint.

The Court's order dismissed the First Amended Complaint because Plaintiff "fail[ed] to provide sufficient detail regarding the testing" that formed the basis for her allegations, and thus failed to meet Rule 9(b)'s heightened pleading standard. *Barton*, 2025 WL 486316, at *10. The Court also concluded that Plaintiff's omission-based claims failed because she did not allege Defendant had a duty to disclose that the tampons may contain lead, Plaintiff's UCL claim failed based on the "unfair prong" and on a violation of Proposition 65, and Plaintiff's UCL and FAL claims failed to the extent she sought disgorgement and restitution. *Id.* at *11–14. The Court declined to find preemption or to apply the primary jurisdiction doctrine, and found that Plaintiff had statutory standing, stated affirmative misrepresentations, and had standing to pursue injunctive relief. *Id.* at *4–8, *10–11, *14–15. Dismissal was without prejudice, and the Court gave Plaintiff leave to amend. *Id.* at *17.

Plaintiff responded to the dismissal order by filing a Second Amended Complaint. The amendment added conclusory allegations that the testing commissioned by Plaintiff's counsel was done by an unidentified "independent laboratory" with "accreditations." SAC ¶ 26. The testing was done on "a homogenous sample of each

of Defendant's regular, super and super plus size tampons," using "Inductively Coupled Plasma – Mass Spectrometry ('ICP-MS')." *Id.* ¶¶ 26–30. The testing is not alleged to have been done on Plaintiff's purchased tampons. Also missing are key facts about the testing, such as the identities and qualifications of the testers, the date and timing of the testing, the source of the tested tampons, how many were tested, the dates the tested tampons were purchased or manufactured, or the chain of custody for the samples. No reports from the lab are provided.

Plaintiff alleges that based on the testing of other tampons, she has claims for economic injury; she says she would not have purchased the Products had she known about the alleged presence of background levels of lead. *See id.* ¶¶ 12, 65–67, 88, 176. Plaintiff asserts claims under (1) the Unfair Competition Law ("UCL"); (2) False Advertising Law ("FAL"); and (3) Consumer Legal Remedies Act ("CLRA").

### ARGUMENT

## I.    The SAC Does Not Cure the Pleading Deficiencies the Court Identified.

Plaintiff's recent amendment only confirms that she cannot allege the basic elements of a consumer fraud claim. "Because Plaintiff's claims 'sound in fraud,' they must satisfy the heightened leading requirements of Rule 9(b)." *Barton*, 2025 WL 486316, at *8 (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)). To satisfy that heightened standard, Plaintiff must allege with particularity the "who, what, when, where, and how" of the alleged fraud and state "what is false or misleading about a statement, and why it is false." *Id.* (quoting *Kearns*, 567 F.3d at 1124, and *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc)).

This Court dismissed the First Amended Complaint because its "allegations as to the presence of lead fail to provide sufficient detail regarding the testing" and because Plaintiff "failed to test the super and super plus Products purchased by" her and did not "explain why extrapolation of the regular U by KOTEX Click results is appropriate." *Id.* at *10. The Second Amended Complaint does not cure those defects; instead, it falls well short of Rule 9(b)'s heightened bar for three reasons: (1) its new testing allegations

do not say anything about the Products Plaintiff purchased; (2) it fails to allege that the Products *exposed* Plaintiff to lead; and (3) insofar as it attempts to allege a potential *risk* of harm, it runs headlong into the materiality requirement for fraud claims.

### A. Plaintiff Fails to Allege With Particularity That the Products She Bought Contain Lead.

Plaintiff's claims all turn on the premise that the tampons she purchased contained an amount of lead that exceed certain Proposition 65 thresholds.  *See* SAC ¶¶ 7 & n.2, 45.  The Court held that the prior "allegations as to the presence of lead fail to provide sufficient detail regarding the testing." *Barton*, 2025 WL 486316, at *10.  Specifically, the Court required Plaintiff to either "test the super and super plus Products purchased by Plaintiff" or "explain why extrapolation" of the tested Products is warranted.  *Id.* Plaintiff's new allegations fail to do either.

First, there is no question that Plaintiff has not provided testing results for the regular or super absorbency tampons she purchased.  (Plaintiff does not allege that she purchased any super plus absorbency tampons, so testing of that absorbency couldn't have applied to her purchases either.)  The Second Amended Complaint never alleges that the tampons tested came from the same boxes that Plaintiff bought, nor does it allege that the tested tampons were bought at the same time and came from the same manufacturing lot.  Plaintiff's failure to use this opportunity to submit her own Products for testing is sufficient grounds to dismiss under Rule 9(b).  *See, e.g.*, *Lurenz v. Coca-Cola Co.*, 2024 WL 2943834, at *3 (S.D.N.Y. June 10, 2024) (dismissing claims in part because "Plaintiff did not test the Product that he actually purchased" and did not allege why a single test of products that he did *not* purchase could be extrapolated to his purchased product).

Second, Plaintiff has not pleaded any facts to explain why the Court should assume that testing of the tampons she personally purchased would come back with the same results as those tampons she did test.  All she offers are conclusory assertions that the testing was done by a laboratory that is "independent" and "accredited"; that the

method used was "Inductively Couple Plasma – Mass Spectrometry ('ICP-MS'); and that the sample was "homogenous."  SAC ¶¶ 26–30.  These are all conclusory statements, and they do not come close to providing the required details, like "the testing methodology followed, the specific time of the testing, [and] the qualifications of the testers." *Trammel v. KLN Enters., Inc.*, 2024 WL 4194794, at *5 (S.D. Cal. Sept. 12, 2024) (cleaned up).  Courts refuse to draw the inference that Plaintiff advocates for here—that limited testing of a product means that every product exhibits the particular defect.  *See, e.g.*, *Fahey ex rel. D.C. v. Deoleo USA, Inc.*, 2018 WL 5840664, at *2 (D.D.C. Nov. 8, 2018) (testing of three products was insufficient to infer plaintiff's product exhibited the defect).

Nor are there any particular allegations about the testing methodology itself. Although Plaintiff now identifies the *technique* purportedly used to conduct the testing (ICP-MS), she does not say what the parameters for the testing were, what controls were used (if any), and whether there were any caveats that the laboratory issued in connection with the results of the test.  *See* ECF 11 (Motion to Dismiss FAC) at 14.  Plaintiff also fails to provide specific dates or times of the testing (*Trammel*, 2024 WL 4194794, at *5), information about the lot that the tested samples came from, or a copy of the testing results themselves—despite the fact that Defendant's motion to dismiss the First Amended Complaint already put Plaintiff on notice about these pleading deficiencies. *See* ECF 11 at 14; *see also Bodle v. Johnson & Johnson Consumer Inc.*, 2022 WL 18495043, at *2 (N.D. Cal. Feb. 24, 2022) (dismissing claims where "Plaintiff does not allege that she ever purchased or used a product produced from the allegedly contaminated batches").

The thrust of these missing details is that the only similarity Plaintiff offers about the tested tampons and the ones she bought is that they share a brand name and absorbency level.  The Court has already ruled that this is not enough, as it expressly considered this point when it examined Plaintiff's allegations about the testing of regular tampons and held that more was required.  *Barton*, 2025 WL 486316, at *10.  Although

Plaintiff now has tested super and super plus tampons (SAC ¶¶ 28–29), that additional testing only compounds the error that this Court identified.  Testing more tampons Plaintiff did not buy does not explain why the results of those tests can be applied to Plaintiff's purchases.  *See Barton*, 2025 WL 486316, at *10; *see also, e.g.*, *Fahey*, 2018 WL 5840664, at *2; *Gaminde v. Lang Pharma Nutrition, Inc.*, 2019 WL 1338724, at *2 (N.D.N.Y. Mar. 25, 2019) (finding it was "speculation" to conclude that a sample size of a product meant that the plaintiff purchased a bottle with the alleged defect as well).  Simply because the brand name and absorbency match does not mean that Plaintiff's tampons necessarily had the same amount of lead as the tested tampons (if any).  That is especially the case if the tampons tested came from a different time, a different location, a different lot, and from a different set of raw materials.  The alleged presence of lead here is in very small amounts as a background substance, not some sort of ingredient or product feature.  The variance is seen in Plaintiff's own testing results, which shows that even the tested tampons do not have the same amounts of lead being detected.  And the super and super plus tampons had *less* lead than she had previously alleged they had in the First Amended Complaint before she conducted the testing— 16% less for the super tampons and 22% less for the super plus tampons.  This variance illustrates why Plaintiff cannot simply take one test and assume that its results can be applied to the tampons she purchased just because they share a common brand name.

To avoid dismissal, a plaintiff must allege facts excluding the plausible conclusion "that the single test result was a result of a false positive" or "an isolated incident of contamination."  *Lurenz*, 2024 WL 2943834, at *3.  To assume otherwise is "pure speculation" that is not bolstered by any well-pleaded facts.  *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1031 (8th Cir. 2014).  At bottom, Plaintiff's additions to the complaint still do not provide any "specificity as to the results reached or any other findings that would support Plaintiff['s] interpretation of those results."  *Lowe v. Edgewell Pers. Care Co.*, 711 F. Supp. 3d 1097, 1104 (N.D. Cal. 2024).  Even after being given an opportunity to amend, there are no newly added facts creating a

"particularized reason to think" that the tampons Plaintiff purchased "actually [contained] the alleged" lead. *Wallace*, 747 F.3d at 1030 (even if *some* of defendant's kosher beef "was improperly certified as kosher," there was "no reason to think *all* the beef" was not kosher—the complaint didn't state "how many packages were tainted" so it was "pure speculation to say the particular packages sold to the consumers were tainted by non-kosher beef"); *Greer v. Strange Honey Farm,* LLC, 114 F.4th 605, 615 (6th Cir. 2024) (rejecting testing allegations that did "not explain how these samples were tested, who conducted the testing, how many samples were tested," or "whether any (or how many) samples" showed defects, and that did "not allege that the jars of honey purchased by plaintiffs were the samples with the [defects] or even that those jars purchased by plaintiffs were among the samples tested at all").

**B.    Plaintiff Fails to Allege With Particularity That the Products She Bought Exposed Her to Unsafe Amounts of Lead.**

Even if the Court were to allow Plaintiff to extrapolate the testing results to her products, that would not absolve her from pleading facts showing that the tampons exposed her to "unsafe levels of [lead]." *Rodriguez v. Equal Exch., Inc.*, 2024 WL 1421971, at *4 (S.D. Cal. Mar. 31, 2024). The Second Amended Complaint lists the amounts of lead allegedly found in each absorbency of the Products and asserts that the Product "exposes consumers to lead in excess of the MADL" because "consumers will use an average of between three to six Products in a 24-hour period. SAC ¶¶ 39–45; *see also id.* ¶ 7. But Plaintiff never alleges how the Products could expose consumers to lead, nor does she explain how any alleged exposure could be at harmful levels.

First, Plaintiff cannot plead any exposure pathways. She simply assumes that 100% of any lead in the tampons is released and that 100% of that lead is absorbed by the body. *See* SAC ¶¶ 17–18. But as the Court recognized in dismissing Plaintiff's pure omissions claim, "there is no allegation that the tampons even release lead" or that released lead is absorbed. *Barton*, 2025 WL 486316, at *12; *cf. Dalewitz v. Procter & Gamble Co.*, 2023 WL 6215329, at *3 (S.D.N.Y. Sept. 22, 2023) (plaintiff did not

"plausibly ple[a]d that the presence of [a chemical contaminant] would 'migrate' from the Product into a consumer's saliva or onto their hands").

Notably, the Shearston article Plaintiff cites supports dismissal: it "cannot speculate on potential harm to the health of menstruators" because "future studies are necessary to assess whether metals can leach out of tampons and become bioaccessible for vaginal absorption." Loose Decl. Ex. 5 at 78. This Court likewise relied on the FDA's recent literature review, which *continued* to recommend tampons as safe. *Barton*, 2025 WL 486316, at *12. This conclusion is also eminently logical—tampons exist to *absorb* fluids, and they are then discarded. Plaintiff's conclusory allegations about alleged exposure to lead can, and should, therefore be disregarded because the Court is "not required to accept" such contradicted allegations as true. *Id.* (quoting *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1096 (9th Cir. 2004)). The suggestion that *all* of the metal allegedly in the tested Products (1) leaches out of the Products and (2) is absorbed by the human body is not plausible, and is contradicted by the judicially noticeable materials cited in the Second Amended Complaint and before the Court.

Second, even if there were *some* amount of metal that *could* leach out of the Products and then be absorbed by the human body, Plaintiff fails to plausibly allege that the specific level of lead allegedly makes them unsafe "at the particular levels here." *Id.* Plaintiff describes the amounts of lead allegedly found in the Products as "substantial," but the only basis she proffers for that description is her assertion that the "ordinary and expected use of any size of the Products (which, according to Defendant, involves the use of 3-6 tampons per day) exposes consumers to lead in excess of the MADL." SAC ¶ 45; *see also id.* ¶ 7. This Court has already rejected Plaintiff's blind reliance on Proposition 65's MADL, which simply "trigger[s] notice requirements" and cannot serve as a proxy for well-pleaded allegations showing that the Products are harmful "at the particular levels here." *Barton*, 2025 WL 486316, at *12.

Other courts have concluded that using Proposition 65's MADL as a safety threshold is nothing more than a false equivalency. That is because Proposition 65 levels

are not safety thresholds; they are statutory notice "safe harbor" thresholds. For example, in *In re Trader Joe's Co. Dark Chocolate Litigation*, 726 F. Supp. 3d 1150 (S.D. Cal. 2024), the court concluded that simply alleging the products contain lead "above MADL levels" alone "do[es] not allege that these levels can cause the harms alleged." *Id.* at 1170 & n.15. Other California federal courts have reached similar conclusions. *See, e.g.*, *Hayden v. Bob's Red Mill Nat. Foods, Inc.*, 2024 WL 1643696, at *8 (N.D. Cal. Apr. 16, 2024) (rejecting reliance on the MADL to show health risks because "the complaint does not explain why the MADL is the right reference point if Plaintiff's concern is healthfulness, as opposed to Proposition 65 compliance"); *Krystofiak v. BellRing Brands, Inc.*, 737 F. Supp. 3d 782, 800–03 (N.D. Cal. June 14, 2024) (comparing "the measured lead levels" to "the Prop 65 MADL" is insufficient). Moreover, Plaintiff again assumes that 100% of any lead that may be released from the tampons is absorbed by the body, but there simply is no support for such conjecture. *See Barton*, 2025 WL 486316, at *12. And, as relevant here, the MADL is based on lead *inhalation* versus dermal contact, making any reliance on the MADL even more irrelevant.

Even more conclusory is Plaintiff's fallback assertion that "[t]here is no level of exposure to lead that is known to be without harmful effects." SAC ¶ 8. Plaintiff points to a World Health Organization Internet page in support, but as another court recently found, "using the World Health Organization's declaration that there is no safe lead level as a reference is too conclusory" on its own and would "render[] literally *any* alleged level of lead actionable." *Krystofiak*, 737 F. Supp. 3d at 801; *see also In re Pac. Mkt. Int'l, LLC, Stanley Tumbler Litig.*, 2025 WL 241084, at *6 ("[A]llowing these allegations to survive a motion to dismiss would green-light all kinds of lawsuits based merely on the presence of a material that, *in some unspecified amount*, could be harmful."). The Ninth Circuit agrees, noting that similar UCL, FAL, and CLRA claims fail where a plaintiff does "not explain at what level [the allegedly harmful ingredient] become harmful or why the levels of [that ingredient] in [the challenged] products, in

particular, could cause harm." *Davidson v. Sprout Foods*, 106 F.4th 842, 853 (9th Cir. 2024).

Similarly, in *Grausz v. Hershey Co.*, 713 F. Supp. 3d 818 (S.D. Cal. 2024), the court gave no weight to the pleaded conclusion that "[n]o amount of lead is known to be safe," and that the defendant's dark-chocolate products were unsafe because they contained small amounts of lead. *Id.* at 828. The court found that those allegations failed to plead that "the amounts of the substances in Hershey's Products have created an *unreasonable* safety hazard," and it dismissed the plaintiff's UCL, FAL, and CLRA claims. *Id.*; *see also, e.g.*, *Rodriguez v. Mondelez Glob. LLC*, 703 F. Supp. 3d 1191, 1210 (S.D. Cal. 2023) ("Plaintiffs allege no amount of lead is safe and even low levels of cadmium can cause health concerns," but that alone does not amount to a plausible allegation that the defendant "concealed an *unreasonable* safety hazard."); *In re Trader Joe's Co. Dark Chocolate Litig.*, 726 F. Supp. 3d at 1170–71 ("[T]here is a disconnect in the [complaint] between Plaintiffs' allegations about the potential harms posed by Heavy Metals as a general matter and whether these Heavy Metals are unreasonably hazardous at the particular levels in the specific Products at issue in this case. . . . Plaintiffs cannot just say Heavy Metals can be unhealthy and these Products contain some level of Heavy Metals."). The same reasoning applies here and warrants dismissal.

### C. Plaintiff Fails to Allege With Particularity That the Products She Bought Exposed Her to A Risk of Exposure and Harm.

Tacitly recognizing that current science precludes a theory of *actual* exposure and harm, the Second Amended Complaint pivots to a theory of a *risk* of exposure and harm: any lead "in the Products *may* be particularly detrimental to consumer health" and it "*may* 'directly enter[ ] systemic circulation.'" SAC ¶¶ 17, 18 (emphases added). This late-game, speculative harm maneuver turn cannot salvage Plaintiff's claims.

Plaintiff does not allege that she faced a risk of harmful exposure because she still does not allege that she even used the Products. And none of the scientific sources cited in the Second Amended Complaint say anything about a risk of exposure to lead through

normal tampon use.  The Shearston article expressly disclaims *any* findings on exposure, including any facts that could support even a risk of exposure and harm.  *See* Loose Decl. Ex. 5 at 78.  And even if Plaintiff's allegations could be stretched far enough to support an inference of a risk of exposure, to then further infer a risk that any such exposure could occur at harmful levels in products she never tested would turn Rule 9(b)'s heightened pleading standard on its head.  *See Muldoon v. DePuy Orthopaedics, Inc.*, 2025 WL 604970, at *8 (N.D. Cal. Feb. 25, 2025) ("[A]bstract pleading based on suppositions rather than particular circumstances fails to satisfy Rule 9(b)'s pleading requirements.").

In any event, if Plaintiff is now saying that the alleged lead in the tampons pose only a vague risk of exposure and harm, then she cannot show that the mere presence of trace amounts of lead that may or may not harm them would be material to a reasonable consumer.

*In re Pacific Market International, LLC, Stanley Tumbler Litigation* is instructive. There, the plaintiffs brought fraud claims under both Washington and California consumer protection laws, alleging that they would not have purchased Stanley cups if the defendant had disclosed that the cups contained lead.  2025 WL 241084, at *1.  Like Plaintiff here, "because they allege[d] that the use of lead was material due to the attendant risk of physical harm," both "specific lead levels and physical harm" *were* "at issue."[1]  *Id.* at *5; *see, e.g.*, SAC ¶¶ 85–88 ("Plaintiff would not have purchased the Products" had she known that they contained "potentially harmful ingredients or elements (such as lead).").  "Thus, without sufficient allegations to show that the lead in the [Products] could pose actual *harm* to consumers, 'the apparent need for disclosure is

---

[1] Though this part of the opinion concerned claims asserted under the Washington Consumer Protection Act ("WCPA"), it was incorporated into the sections of the opinion disposing of the plaintiffs' claims under California's UCL and CLRA.  *See id.* at *13 (dismissing UCL and CLRA claims "because they do not allege materiality" as discussed in the WCPA section).  Moreover, the court cited California cases in analyzing the WCPA claim.  *See id.* at *5–6.

14

Gibson, Dunn &
Crutcher LLP

a moot proposition.'" *In re Pac. Mkt. Int'l, LLC, Stanley Tumbler Litig.*, 2025 WL 241084, at *5 (emphasis added); *see also Sprout Foods*, 106 F.4th at 853 (rejecting allegations of general risks of harm that rely "on hypotheticals and contingencies outside the scope of this case").

Even under her new risk-based theory of liability, Plaintiff still fails to state fraud claims under Rule 9(b) because she has not sufficiently alleged that Defendant's failure to disclose the presence of lead in the Products is "material, as [she] ha[s] not shown sufficient harm from the specific amount of lead in the [Product]." *In re Pac. Mkt. Int'l, LLC, Stanley Tumbler Litig.*, 2025 WL 241084, at *5. Rather, the Second Amended Complaint's "allegations about the possible effects of lead exposure are completely disconnected from the [Product], unrelated to any specific amount of lead, or conclusory as to lead's universal effects." *Id.* (citation omitted); *see supra*, at pp. 10–13. "Without additional factual support that demonstrates a specific and plausible risk of harm from the lead in [the Product], the mere presence of lead could not be material to a reasonable consumer." *In re Pac. Mkt. Int'l, LLC, Stanley Tumbler Litig.*, 2025 WL 241084, at *6; *see also Avedisian v. Mercedes-Benz USA, LLC*, 43 F. Supp. 3d 1071, 1077 (C.D. Cal. 2014) ("[A] defect is material only if it poses safety concerns."). Otherwise, "allowing these allegations to survive a motion to dismiss would green-light all kinds of lawsuits based merely on the presence of a material that, *in some unspecified amount*, could be harmful. *In re Pac. Mkt. Int'l, LLC, Stanley Tumbler Litig.*, 2025 WL 241084, at *6.

## II.   Plaintiff Still Fails to State the Elements of Her Statutory Claims.

### A.   Plaintiff Fails to Allege That Defendant's Representations Are Likely to Mislead Reasonable Consumers.

Plaintiff's statutory claims are governed by the "reasonable consumer standard," which asks whether "members of the public are likely to be deceived" by Defendant's advertising. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). According to the Second Amended Complaint, the Products contained the following representations: "'no harsh ingredients'; "elemental chlorine-free rayon"; "pesticide

free"; "made without fragrance"; "gynecologist tested"; and "BPA free." SAC ¶¶ 3, 54.
Plaintiff alleges that these representations "lead reasonable consumers to believe that the
Products are safe to use, including because they are free from potentially harmful
substances and ingredients." *Id.* ¶ 55.  That is misleading, Plaintiff contends, because
of "the lead contained in the Products, which Defendant fails to disclose." *Id.* ¶ 56.
Defendant's representations are not capable of deceiving reasonable consumers because
there is no reason for them to believe that there is any risk that they will be exposed to
any amounts of lead, much less harmful amounts.  For that same reason, Plaintiff cannot
allege that Defendant had a duty to disclose anything, or that any omitted fact is material
to reasonable consumers.

> *Affirmative Misrepresentations*.     The Court previously denied Defendant's
motion to dismiss under an affirmative misrepresentation-based theory.  However, in
doing so, the Court did not have the benefit of considering the Federal Trade
Commission's ("FTC") Green Guides, which "provide the Commission's views on how
reasonable consumers likely interpret certain claims." 16 C.F.R. § 260.1(d).  The Green
Guides state that "a free-of or does-not-contain claim is appropriate" and is not
"deceptive" if a background-level substance wasn't "added intentionally" and doesn't
cause material harm.  16 C.F.R. § 260.9.  Defendant does not agree that any of its
representations amount to a "free-of" claim or relate in any way to lead, but to the extent
the Court adopts Plaintiff's interpretation (SAC ¶ 55), the Green Guides instruct that the
representations are not misleading because Plaintiff alleges that the Products contain
only background levels of lead (i.e., trace amounts) and Plaintiff does not allege that the
trace amounts of lead were "added intentionally."  16 C.F.R. § 260.9(c).

> The case law likewise agrees—there is nothing actionable here about Defendant's
alleged statements, particularly when the statements at issue here are *true*.  *See, e.g.*,
*Hayden*, 2024 WL 1643696, at *7 (rejecting "free of" claims); *Miller v. Philips N. Am.
LLC*, 2025 WL 582160, at *2 (N.D. Cal. Feb. 20, 2025) ("[T]he representations that the
Products are 'BPA Free' are specific and truthful."); *Brown v. Madison Reed, Inc.*, 622

F. Supp. 3d 786, 802 (N.D. Cal. 2022) (holding that reasonable consumers would not interpret representation that hair color product is "free of ammonia, resorcinol, [and] PPD" as warranting that the product is "healthier, safer, or gentler than other hair color products"), *aff'd*, 2023 WL 8613496 (9th Cir. Dec. 13, 2023).  In contrast to the cases cited in the Court's prior order, the statements here are all discrete and true.  *Cf. In re Trader Joe's Co. Dark Chocolate Litig.*, 726 F. Supp. 3d 1150, 1158 (S.D. Cal. 2024) (defendant's statements included broad representations such as "quality ingredients" and representations regarding the "health and safety of [its] customers"); *Barnes v. Nat. Organics, Inc.*, 2022 WL 4283779, at *7 (C.D. Cal. Sept. 13, 2022) (statements like "safe and natural dietary means" and reference to the product's protection from "harmful factors" were actionable misrepresentations on the presence of heavy metals).  All of the statements except for "no harsh ingredients" indisputably relate to substances *other than* lead.  And as to the "no harsh ingredients" statement, it is beyond dispute that lead is *not* an ingredient instead of a potential background substance (at incredibly trace amounts).  Therefore there is nothing misleading about the "no harmful ingredients" statement, and the remaining statements are completely unrelated to lead.

In any case, the Court held that "the reasonable consumer could be misled into believing that the Products are free of lead based on the Representations"—not that they could be misled into believing that the Products expose them to harmful amounts of lead. *Barton*, 2025 WL 486316, at *11.  Even if the representations could cause consumers to believe that the Products are free from lead, they are unlikely to deceive or confuse consumers because any lead allegedly present in the Products is at background amounts that consumers are not even at risk of being exposed to.  *See supra*, at pp. 10–15. Plaintiff's entire theory is that she would not have purchased the Products if she knew that they contained lead *because* she (erroneously) believes the "Products contains [sic] a substantial amount of lead" that consumers are "expose[d]" to.  SAC ¶¶ 6–7, 45, 62. Since the Products (at best) contain only background amounts of lead that consumers are not exposed to, the representations cannot be materially deceptive.

_Duty to Disclose_.  The Court previously dismissed Plaintiff's claims under an omissions-based theory because Plaintiff had "not sufficiently alleged that the presence of lead amounts to an unreasonable safety hazard." _Barton_, 2025 WL 486316, at *11–12.  Plaintiff has since removed all references to "omissions" in the Second Amended Complaint, but it still alleges that the representations were misleading because Defendant failed to disclose that the Products contain lead.  SAC ¶¶ 55–56.  Although unclear, Plaintiff appears to still be asserting a quasi-omission-based theory.

To the extent Plaintiff is trying to preserve a pure omissions claim based on a duty to disclose, it should be dismissed because Plaintiff did not even attempt to remedy the deficient allegations.  As this Court previously noted, Defendant does not have a duty to disclose because  (1) "there is no allegation that the tampons even release lead"; (2) the Shearston article and the FDA's literature review "contradicts" any claim of exposure or risk of exposure; (3) even if there is exposure, there is no allegation that the lead is harmful "at the particular levels in the specific Products"; and (4) Plaintiff fails to "allege the materiality of the defect" or "its centrality to the product's function."  _Barton_, 2025 WL 486316, at *12.  Plaintiff has not addressed any of these points, warranting dismissal.

To the extent Plaintiff asserts that the representations are "half-truth[s]" that give rise to a duty to "speak the whole truth to the end that [Defendant] does not conceal any facts which materially qualify those stated," Plaintiff's argument falls flat.  _Simon v. Starbucks Corp._, 2010 WL 11597516, at *2 (C.D. Cal. Dec. 2, 2010).  Lead disclosures do not "qualify" the representations, which have nothing to do with lead.  As explained above, nothing in the representations "expressly or impliedly warrants that the [Products] will be [lead]-free," so Plaintiff cannot "bootstrap" the representations "into a representation that the [Products] are [lead]-free."  _Hoey v. Sony Elecs. Inc._, 515 F. Supp. 2d 1099, 1104 (N.D. Cal. 2007); _see supra_ at pp. 16–17.  And even if she could, that interpretation would run afoul of the FTC's Green Guides as to what a reasonable consumer would find misleading.  _See supra_ at p. 16.

Moreover, the allegedly "concealed information must be material or likely to mislead." *W. Pac. Elec. Co. Corp. v. Dragados/Flatiron*, 534 F. Supp. 3d 1209, 1249 (E.D. Cal. 2021). "A fact is material if its existence or nonexistence is a matter to which a reasonable person would attach importance in determining his or her choice of action in the transaction." *Toombs v. Leone*, 777 F.2d 465, 469 (9th Cir. 1985). The Second Amended Complaint still does not "sufficiently allege the materiality of the defect," as any trace amounts of lead allegedly present in the Products are immaterial given the lack of consumer exposure to lead at harmful levels. *Barton*, 2025 WL 486316, at \*12; *see supra*, at pp. 10–15. Reasonable consumers would not consider background levels of *any* substance that appears ubiquitously around them, that they aren't exposed to, and that can't hurt them, to be material. *See In re Pac. Mkt. Int'l, LLC, Stanley Tumbler Litig.*, 2025 WL 241084, at \*5; *see also Avedisian*, 43 F. Supp. 3d at 1077.

### B.    Plaintiff Fails to Allege the Unfair and Unlawful Prongs of a UCL Claim.

Plaintiff also fails to state a claim under the UCL's unfair or unlawful prongs and has not remedied the deficiencies this Court recognized in its Motion to Dismiss order.

The Court previously dismissed Plaintiff's UCL claim under the unfair prong because allegations that Defendant knowingly omitted material information about lead based on an "improper motive" for financial gain and knowingly failed to "adopt policies in accordance with and/or adherence to applicable laws" are too "conclusory and insufficient" as a matter of law. *Barton*, 2025 WL 486316, at \*13. The Second Amended Complaint's allegations are no different. Plaintiff again alleges that "Defendant had an improper motive—to derive financial gain at the expense of accuracy or truthfulness"—and that there were "reasonable alternatives available." SAC ¶¶ 113–14, 125–26. Plaintiff adds new allegations, but no new facts—her amendments merely amount to legal conclusions, such as: "Defendant's conduct violates the Immoral Test because Defendant intentionally makes the Representations to increase sales of the Products"; "Defendant was and is aware that its Representations are misleading";

"Defendant's conduct is substantially injurious because consumers purchase the misrepresented Products in reliance on Defendant's Representations"; and "Defendant's conduct also violates the 'Balancing Test' because the utility of Defendant's conduct in labeling the Products with the Representations is outweighed by the harm to consumers." *Id.* ¶¶ 115–24.

The Second Amended Complaint's allegations are just as conclusory as the ones the Court already rejected. *See Barton*, 2025 WL 486316, at *13. Because Plaintiff's UCL claim under the unfair prong "is based entirely on the allegation that" Defendant has and "continue[s] to falsely represent" the Products' safety, Rule 9(b) applies. *ProconGPS, Inc. v. Star Sensor LLC*, 2011 WL 5975271, at *2 (N.D. Cal. Nov. 29, 2011). Plaintiff attempts to bolster her threadbare allegations of improper financial motive by alleging that, "[o]n information and belief, it costs less for Defendant to manufacture the Products (containing lead) than it would cost for Defendant to manufacture organic cotton tampons (without lead)." SAC ¶ 51. Conclusory allegations based "on information and belief" are insufficient to satisfy Rule 9(b). *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (under Rule 9(b), "a plaintiff who makes allegations on information and belief must state the factual basis for the belief"); *see also ProconGPS*, 2011 WL 5975271, at *2. This is also a plainly illogical argument— there is no reason to believe that an *organic* product (which almost always costs *more* than a non-organic one) is cheaper to manufacture than a non-organic one.[2]

As to Plaintiff's UCL claim premised on the unlawful prong, the Court held that Plaintiff could proceed based on "an alleged violation of the CLRA" because the Court had found that Plaintiff's affirmative misrepresentation claims survived. *Barton*, 2025 WL 486316, at *13. For the reasons stated above, none of Plaintiff's fraud-based claims

---

[2] Although Plaintiff notes that the organic tampons she tested had no lead, the Shearston article found that even the organic tampons tested had lead. *See* Loose Decl. Ex. 5 at 75. Organic tampons also had higher concentrations of other substances, such as arsenic. *See id.* at 78.

can stand, both under Rule 9(b)'s heightened pleading standard and under the reasonable consumer standard. *See supra* at pp. 6–19; *see also In re Plum Baby Food Litig.*, 2024 WL 1354447, at *7 (N.D. Cal. Mar. 28, 2024) ("[P]laintiffs' claim under the unlawful prong fails because the predicate violations of the FAL and CLRA claims fail."). Therefore, the UCL claim under the unlawful prong also fails.

## III.    Plaintiff's Equitable Claims Should Be Dismissed.

Plaintiff's request for restitution under the UCL and FAL and for injunctive relief under the UCL, FAL, and CLRA should be dismissed because Plaintiff has an adequate remedy at law. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Plaintiff also improperly seeks injunctive relief to force Defendant to reformulate its products, so injunctive relief is unavailable for that reason as well. *See Renn v. Otay Lakes Brewery, LLC*, 2024 WL 331616, at *8 (S.D. Cal. Jan. 29, 2024) (Curiel, J.).

"In order to entertain a request for equitable relief [under California's consumer-protection statutes], a district court must have equitable jurisdiction, which can only exist under federal common law if the plaintiff has no adequate legal remedy." *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022), *cert. denied sub nom. Polaris Indus. Inc. v. Albright*, 143 S. Ct. 2612 (2023). Plaintiff's requests for equitable relief fail because Plaintiff seeks a return of the money she paid for the Products under the CLRA (SAC ¶ 182), which is "an adequate legal remedy." *Guzman*, 49 F.4th at 1312; *see also, e.g., Kenney v. Fruit of the Earth, Inc.*, 2023 WL 3565076, at *3 (S.D. Cal. Apr. 3, 2023) (similar); *Rodriguez*, 2024 WL 1421971, at *9–10 (dismissing request for restitution without leave to amend because plaintiff sought CLRA damages); *Shay v. Apple Inc.*, 2021 WL 1733385, at *3–5 (S.D. Cal. May 3, 2021) (Curiel, J.) (applying this requirement to "injunctive relief claims").

The Court dismissed Plaintiff's UCL and FAL claims "to the extent she seeks restitution and/or disgorgement" because "Plaintiff here pleads <u>no</u> allegations that the legal remedies are inadequate for the restitution or disgorgement that she seeks under the UCL and FAL." *Barton*, 2025 WL 486316, at *14. Although the Court gave

Plaintiff "leave to amend the complaint to expressly allege *facts* to support a claim that her remedies at law are inadequate," Plaintiff has not done so. *Id.* (emphasis added). The Second Amended Complaint does not allege why her request for damages is inadequate to remedy her economic loss claims. That "flaw is fatal" to her equitable claims. *Scheibe v. Performance Enhancing Supplements, LLC*, 2023 WL 5444644, at *5 (S.D. Cal. Aug. 23, 2023).

Rather than respond to the Court's directive to plead facts, the Second Amended Complaint adds talismanic, conclusory sentences that her "legal remedies are inadequate to prevent future injuries." SAC ¶¶ 93, 135, 154. That conclusion is contradicted by the rest of the Second Amended Complaint. As discussed above (*supra*, p. 6), Plaintiff claims that she incurred only an economic injury (*see, e.g.*, SAC ¶¶ 12, 65), which is "exactly the type of injury for which legal remedies are appropriate." *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 908 (N.D. Cal. 2021). Plaintiff provides no reason to deviate from this well-established standard and conclusion.

Plaintiff also alleges that disgorgement is unique because it "serves as a deterrent for future, unlawful conduct" and "can be readily measured as a sum certain according to Defendant's financial records while legal damages are generally subject to complex and costly expert valuation." SAC ¶¶ 136, 140, 155, 159. But Plaintiff offers no facts that would tend to show, let alone plausibly establish, that disgorgement is more "readily measured" than legal damages. For example, Plaintiff does not even suggest how access to Defendant's financial records would make it easier to ascertain the dollar amount of "monies wrongfully acquired by Defendant by means of [its] acts of false advertising" (*id.* ¶ 153) than to calculate legal damages based on "the purchase price of the Products and/or the price of the Products at which they were offered" (*id.* ¶ 178). Moreover, "the factual predicate and the theory underlying" Plaintiff's claim for legal damages under the CLRA and for equitable relief under the UCL and FAL "appear to be essentially the same." *Shuman v. SquareTrade Inc.*, 2021 WL 5113182, at *11 (N.D. Cal. Nov. 3, 2021). In such instances, legal remedies *are* adequate.

Gibson, Dunn & Crutcher LLP

Plaintiff also seeks injunctive relief, but the injunctive relief she seeks is reformulation, which this Court previously rejected. *See Renn*, 2024 WL 31616, at *8. Plaintiff alleges that she "would like to purchase the Products in the future *if* the Products did not contain lead." SAC ¶ 90 (emphasis added). She therefore seeks injunctive relief that allows her "to reasonably determine whether the lead in the Products has been addressed and remedied"—i.e., reformulation. *Id.* ¶ 92; *see also id.* ¶¶ 143, 162 (seeking remediation). Because she seeks an improper form of injunctive relief, she cannot use her request for injunctive relief as an end-run around *Sonner*.

## IV.    The Second Amended Complaint Should Be Dismissed With Prejudice.

Courts should not grant leave to amend where a plaintiff has "fail[ed] to cure deficiencies by amendments previously allowed" or where amendment would be futile. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (quotation marks omitted). Defendant's motion to dismiss the First Amended Complaint, and the Court's order granting the motion, put Plaintiff on notice of her pleading deficiencies. *See generally* ECF 11. Plaintiff has not adequately addressed those deficiencies in her Second Amended Complaint.

By "simply restating [her] prior claims" with just a few additional irrelevant facts that she already had in her possession and that don't move the needle in her favor (and if anything, undercut her allegations), further amendment would be futile. *Fid. Fin. Corp. v. Fed. Home Loan Bank of San Francisco*, 792 F.2d 1432, 1438 (9th Cir. 1986) (refusing leave to amend where "[t]he factual bases of the claims were known to [plaintiff] long before" and amendment would prejudice defendant). This Court should thus dismiss the Second Amended Complaint with prejudice.

CONCLUSION

For the foregoing reasons, this Court should dismiss the Second Amended Complaint in full, with prejudice.

1

2    DATED:  April 7, 2025                    Respectfully submitted,

3

4                                            GIBSON, DUNN & CRUTCHER LLP

5

6                                            By:  */s/ Timothy W. Loose*
                                             _____

7                                                  Timothy W. Loose

8                                            Attorneys for Defendant KIMBERLY-
                                             CLARK CORPORATION
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28