1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                           SOUTHERN DISTRICT OF CALIFORNIA

10

11   ALLISON BARTON, individually and on       Case No. 3:24-CV-01337-GPC-KSC
     behalf of others similarly situated,
12                                              **ORDER GRANTING IN PART AND**
                                    Plaintiff,  **DENYING IN PART MOTION TO**
13                                              **DISMISS**
     v.
14                                              **[ECF No. 28]**
     KIMBERLY-CLARK CORPORATION,
15
                                    Defendant.
16

17

18        In this class action lawsuit, Plaintiff has filed several consumer protection claims

19   against Defendant for allegedly misleading consumers about the presence of lead in

20   Defendant's tampon products. Before the Court is Defendant's motion to dismiss the

21   Second Amended Complaint. ECF No. 28. Plaintiff filed an opposition, and Defendant

22   filed a reply. ECF Nos. 31, 32. Based on the reasons below, the Court DENIES

23   Defendant's motion to dismiss.

24                                     **BACKGROUND**

25        Plaintiff Allison Barton ("Plaintiff") has sued Defendant Kimberly-Clark

26   Corporation ("Defendant") for allegedly violating California consumer protection law

27   regarding its U by KOTEX Click® compact tampons (the "Products"). ECF No. 25,

28
                                            1

Second Amended Complaint ("Complaint" or "SAC") ¶ 2. Plaintiff alleges that Defendant's Product labels misled consumers into believing Products are free of lead. *Id*. ¶¶ 4-5.

**A. Lead in tampons**

According to Plaintiff, the World Health Organization states that "[t]here is no level of exposure to lead that is known to be without harmful effects" and that "[e]xposure to lead can affect multiple body systems and is particularly harmful to young children and women of child-bearing age." SAC ¶¶ 8, 25. Citing to an article published in a scientific toxicology journal, Plaintiff allege that lead can lead to "severe health risks and toxicity, including inhibiting neurological function, anemia, kidney damage, seizures, and in extreme cases, coma and death." *Id*. ¶ 16. The Complaint also alleges that the ordinary and expected use of the Products would expose consumers to more than the Maximum Allowable Dose Level ("MADL") of 0.5 micrograms of lead per day for reproductive toxicity, as established by California's Proposition 65. *Id*. ¶ 7.

Plaintiff alleges that scientific testing of Defendant's Products by an independent and accredited laboratory showed that the Products contained a substantial amount of lead. *Id*. ¶¶ 26, 35. In July 2024, this laboratory used Inductively Coupled Plasma – Mass Spectrometry ("ICP-MS"), a method recognized for precision in measuring heavy metal presence, to test homogenous samples of a variety of Defendant's Products. *Id*. ¶¶ 27-32. Plaintiff alleges that based on the daily average use of tampons, consumers are exposed to lead in excess of the MADL, regardless of what size Product they use. *Id*. ¶ 45.

**B. Alleged misrepresentations**

According to Plaintiff, the Products contain the following prominent messaging ("Representations") on their boxes: (i) "no harsh ingredients"; (ii) "elemental chlorine free rayon"; (iii) "pesticide free"; (iv) "made without fragrance"; (v) "gynecologist tested"; and (vi) "BPA free." *Id*. ¶ 54.

Plaintiff alleges that these Representations mislead reasonable consumers to believe that the Products are safe to use, including that "they are free from potentially harmful elements and ingredients." *Id*. ¶ 55. According to Plaintiff, a reasonable consumer could believe, based on these Representations, that the Products would be free from lead. *Id*. ¶ 56.

Plaintiff alleges that these Representations misrepresent the presence of lead in Defendant's Products and constitute a violation of California consumer protection law. *Id*. ¶ 146. Plaintiff asserts that Defendant knew, or should have known, that the Products contained lead and either willfully or intentionally failed to disclose this fact to consumers. *Id*. ¶ 148.

### C. Plaintiff's injury and causes of action

Plaintiff allegedly bought the Products, in regular and super-size, several times, without knowing that the products contained lead. *Id*. ¶¶ 77, 84. She relied on the Representations in believing the Products to be free from harmful ingredients such as lead but would not have bought them if she had known the Products contained lead. *Id*. ¶¶ 85-88. Since consumers were "deprived of making the informed choice between the Products and other menstrual products [that do not contain lead]," Plaintiff alleges that she and other consumers have suffered economic injury based on the purchase price of the Products. *Id*. ¶¶ 12, 64-65.

Plaintiff continues to suffer harm because she cannot rely on the labeling of the Products and are unable to determine whether to buy them in the future, even though she would like to purchase them if they do not contain lead. *Id*. ¶¶ 90-91. Unless Defendant is enjoined from failing to disclose the presence of lead in the future, Plaintiff will not be able to determine if there is lead or not in the Products. *Id*. ¶ 92. Thus, Plaintiff alleges that the legal remedies are inadequate to prevent future injuries. *Id*. ¶ 93.

21-CV-01380-GPC-DEB

Plaintiff seeks to represent a Class against Defendant for violations of state consumer protection law: (1) Unfair Competition Law ("UCL"), California Business & Professions Code sections 17200 *et seq.*; (2) False Advertising Law ("FAL"), California Business & Professions Code sections 17500 *et seq.*; and (3) Consumers Legal Remedies Act ("CLRA"), California Civil Code sections 1750 *et seq. Id.* at 17-26.

Defendant moves to dismiss the complaint on various grounds. ECF No. 28 ("Mot."). For the reasons below, the Court DENIES this motion to dismiss.

## PROCEDURAL HISTORY

On July 30, 2024, Plaintiff filed the original complaint. ECF No. 1. On September 4, 2024, Plaintiff Barton filed the First Amended Complaint. ECF No. 8. On October 7, 2024, Defendant filed a motion to dismiss. ECF No. 11. On October 24, 2024, Plaintiff filed a response in opposition to the motion. ECF No. 14. On November 4, 2024, Defendant filed a reply in support of its motion to dismiss. ECF No. 15.

On February 13, 2025, this Court granted in part and denied in part Defendant's motion to dismiss, and granted Plaintiff leave to amend. ECF No. 24 ("Prior Order"). On March 10, 2025, Plaintiff filed a SAC. ECF No. 25. On April 7, 2025, Defendant filed a motion to dismiss Plaintiff's SAC. ECF No. 28. On May 2, 2025, Plaintiff filed a response in opposition to the motion. ECF No. 31. On May 16, 2025, Defendant filed a reply in support of its motion to dismiss. ECF No. 32. The Court now considers Defendant's Motion to Dismiss.

## JUDICIAL NOTICE AND INCORPORATION-BY-REFERENCE

Generally, on a motion to dismiss, courts will limit their review to the contents of the complaint and may only consider extrinsic evidence that is properly presented as part of the complaint. *See Lee v. City of L.A.,* 250 F.3d 668, 688-89 (9th Cir. 2001). However, under the incorporation-by-reference doctrine, courts can consider documents that were not attached to a pleading. *See Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1160 (9th

4

21-CV-01380-GPC-DEB

Cir. 2012) (citation omitted). Courts may incorporate by reference when the complaint "depends on the contents of" the evidence, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); when the complaint also "extensively" references the evidence, *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); and when no party questions the authenticity of the copy attached. *See Knievel*, 392 F.3d at 1076 (describing the judicial doctrine of incorporation-by-reference, which allows courts to consider documents that are not found within, or attached to, the plaintiff's pleading). Furthermore, under Federal Rule of Evidence 201, a district court may take notice of facts not subject to reasonable dispute that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

Defendant seeks incorporation-by-reference or judicial notice of five exhibits: a copy of the 501(k) Premarket Notification for Defendant's tampons, also on FDA's website (Ex. 1); a copy of the online products webpage for Defendant's tampons cited in the SAC paragraph 42, footnote 14 (Ex. 2); a copy of the FDA's announcement on December 23, 2024 that it had completed the literature review portion of its investigation of lead in tampons (Ex. 3); a copy of the FDA's actual report containing the aforementioned literature review (Ex. 4); and a copy of the article cited in the SAC paragraph 27, footnote 5, authored by Shearston, et al. (Ex. 5). ECF No. 29 (Request for Judicial Notice).

The Court takes judicial notice of Exhibits 1, 3, and 4 because there is no reasonable dispute that the webpages can be readily determined as sourced from the government, whose accuracy cannot be reasonably questioned. *See* Fed.R.Evid. 201 (allowing a court to take judicial notice of a fact "not subject to reasonable dispute in that it is ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned")*; see also Daniels-Hall v. Nat l Educ. Ass n*, 629 F.3d 992, 998-99 (9th Cir. 2010) (noting that judicial notice of government websites may be appropriate when neither party disputes the authenticity or accuracy). But the Court will not take judicial notice of

21-CV-01380-GPC-DEB

the truth of any disputed facts contained in these exhibits. *See Lee*, 250 F.3d at 689. The Court incorporates by reference Exhibits 2 and 5 because they are relevant to the instant case, neither party questions their authenticity, and Plaintiff's SAC references and relies on this article to support its allegations. *See* SAC ¶¶ 42, 27.

## LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Election Integrity Project California, Inc. v. Weber*, 113 F.4th 1072, 1081 (9th Cir. 2024); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive a motion to dismiss, the complaint must contain a "short and plain statement showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), backed by sufficient facts that make the claim "plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Rather, it requires enough factual content for the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). In reviewing the plausibility of a complaint, courts must "accept factual allegations in the complaint as true, and construe them in the light most favorable to the non-moving party." *Dent v. Nat'l Football League,* 968 F.3d 1126, 1130 (9th Cir. 2020) (quoting *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.,* 710 F.3d 946, 956 (9th Cir. 2013)). But courts do not accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 954 (9th Cir. 2023). Ultimately, the court must be able

21-CV-01380-GPC-DEB

1  to "draw the reasonable inference that the defendant is liable for the misconduct alleged."

2  *Iqbal*, 556 U.S. at 663.

3  **B. Federal Rule of Civil Procedure 9(b)**

4          Claims sounding in fraud are subject to the heightened pleading requirements of

5  Federal Rule of Civil Procedure 9(b), which requires a plaintiff bringing such a claim to

6  "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P.

7  9(b). The Ninth Circuit has held that a claim is "grounded in fraud" for the purposes of

8  Rule 9(b) where "the plaintiff [ ] allege[s] a unified course of fraudulent conduct and

9  rel[ies] entirely on that course of conduct as the basis of a claim.". *Vess v. Ciba–Geigy*

10  *Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003).  To properly plead fraud with

11  particularity under Rule 9(b), "a pleading must identify the who, what, when, where, and

12  how of the misconduct charged." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964

13  (9th Cir. 2018). In addition, the allegation "must set forth what is false or misleading

14  about a statement, and why it is false." *Id*. The purpose of Rule 9(b) is to require that

15  allegations be "specific enough to give defendants notice of the particular misconduct

16  which is alleged ... so that they can defend against the charge and not just deny that they

17  have done anything wrong." *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 785 (9th

18  Cir. 2024).

19          Here, Plaintiff's SAC claims rely entirely on the same course of alleged fraudulent

20  conduct: Defendant's misrepresentations lead consumers to believe the products are safe

21  when in fact they contain lead.  SAC ¶¶ 55-56.  Accordingly, Plaintiff's claims are

22  subject to Rule 9(b)'s heightened pleading requirement.  *See, e.g., Loh v. Future Motion,*

23  *Inc.*, 2022 WL 2668380, at *5 (N.D. Cal. July 11, 2022) ("each claim is subject to the

24  requirements of Rule 9(b)," including claims for CLRA and unjust enrichment).

25  **C. Leave to amend**

26

27                                                    7

28                                                                              21-CV-01380-GPC-DEB

When a court dismisses a complaint, it "should grant leave to amend... unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Schmitt v. Kaiser Found. Health Plan of Washington*, 965 F.3d 945, 960 (9th Cir. 2020). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." *Armstrong v. Reynolds*, 22 F.4th 1058, 1071 (9th Cir. 2022).

## DISCUSSION

### A. UCL, FAL and CLRA Claims

The UCL prohibits business practices that are "unlawful, unfair or fraudulent," Cal. Bus. & Prof. § 17200; the FAL prohibits the dissemination of any advertising "which is untrue or misleading," Cal. Bus. & Prof. Code § 17500; and the CLRA proscribes specific acts and practices in the sale of goods or services to be unlawful, including making affirmative misrepresentations or omissions regarding the "standard, quality or grade" of a particular good or service, Cal. Civ. Code § 1770(a).

Here, Plaintiff's UCL, FAL and CLRA claims are premised on a theory of affirmative misrepresentation on the tampon labeling which misleads consumers to believe that the tampons are free of any "potentially harmful elements," including lead. SAC ¶ 55. To plausibly allege a UCL, FAL or CLRA claim based upon misrepresentation, plaintiffs "must allege that they relied on a misrepresentation and suffered injury as a result." *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1092 (1993). Claims under these statutes are governed by the "reasonable consumer" standard, which means that Plaintiff must "show that members of the public are likely to be deceived" by the defendant's marketing claims. *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 777 (9th Cir. 2024) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). These claims can be false *or* true but must be "either actually misleading… or ha[ve] a capacity, likelihood, or tendency to deceive or confuse the public." *Salazar v.*

*Walmart, Inc*., 83 Cal. App. 5th 561, 566 (Cal. Ct. App. 2022).  Product labels should not be "read in the abstract," *Andrade-Heymsfield v. NextFoods, Inc*., 2023 WL 2576770, at *3 (S.D. Cal. Mar. 20, 2023), but in the context of the entire packaging messaging.

Specifically, the SAC alleges that the packaging representations mislead the consumer to believe that the tampons are safe to use and free of harmful elements. SAC ¶ 4. This is so because the tampons contain a substantial amount of lead which exposes consumers to amounts of lead that exceed the California Proposition 65 Maximum Allowable Dose Level ("MADL") for reproductive toxicity of 0.5 micrograms of lead per day. *Id*. at ¶ 7.

As a threshold matter, Defendant challenges the testing that Plaintiff relies on to show that the Products contain lead.  ECF No. 28-1, Motion to Dismiss SAC ("Mot.") at 7-10.  Defendant also argues that Plaintiff has not plausibly alleged the health risks of lead in the Products and that no reasonable consumer could understand the specific and truthful Representations to relate to lead.  *Id.* at 10-19.  The Court addresses these issues in turn.

1.  Testing allegations

Defendant claims that Plaintiff has failed to allege with particularity because she has not provided testing results for the products that she actually bought.  Mot. at 7. Defendant points out that the SAC never alleges that the tested tampons came from the same boxes that Plaintiff bought or from the same time period or manufacturing lot.  *See generally* SAC ¶¶ 26-38.   And according to Defendant, Plaintiff should have provided further details, such as "what the parameters for the testing were, what controls were used (if any), and whether there were any caveats that the laboratory issued in connection with the result of the test" and "specific dates or times of the testing… information about the lot that the tested samples came from, or a copy of the testing results themselves…"  Mot. at 8.

21-CV-01380-GPC-DEB

1       The Court finds that Plaintiff is not required to test the products that she had

2   actually purchased.  *See, e.g., Rodriguez v. Mondelez Glob. LLC*, 703 F. Supp. 3d 1191,

3   1205 (S.D. Cal. 2023); *Solis v. Coty, Inc.*, 2023 WL 2394640, at *11 (S.D. Cal. Mar. 7,

4   2023).  Because Plaintiff alleges that the Products and Representations were uniform

5   during the putative Class period and that the entire Product lines contain lead, *see* SAC ¶¶

6   2 (n.1), 54, 69, Plaintiff plausibly alleges that the Products uniformly contain lead.  Not

7   only are plaintiffs not required to test their own products, they are also not required to

8   allege that their specific purchases contained lead.  *See Grausz v. Hershey Co.,* 691 F.

9   Supp. 3d 1178, 1188 (S.D. Cal. 2023) (plaintiff does not need to offer a "formulaic

10  recitation that the specific unit of product she purchased" contains heavy metals); *Castillo

11  v. Prime Hydration LLC*, 2024 WL 4133815, at *2 (N.D. Cal. Sept. 9, 2024) ("At this

12  stage, however, Castillo does not need to allege that her specific purchases contained

13  PFAS as she alleges that testing showed substantial levels of PFAS in the product.").

14      Defendant also argues that Plaintiff has not pled any facts to explain why the Court

15  should assume, or extrapolate, that the tampons she personally bought would have the

16  same results/content as those tampons that *were* tested.  Defendant says that it is not

17  enough for Plaintiff to allege that the tested tampons and the bought tampons "share a

18  brand name and absorbency level," Mot. at 8, and that Plaintiff needs to allege facts to

19  exclude the possibility of the testing results were a "false positive" or "isolated incident,"

20  *id.* at 9.  According to Defendant, the Court required Plaintiff to allege facts that would

21  warrant the extrapolation of the testing results to Plaintiff's own purchases.  *Id.* at 7.

22      This misconstrues the Court's prior order.  The Court did not require Plaintiff to

23  test her own purchased tampons.  *See* Prior Order at 15 ("It does not matter that

24  Plaintiff's *own* tampons were tested or not.").  Defendant latches onto one part of the

25  prior order, in which the Court stated, "Plaintiff relies on extrapolation from the regular

26  Products without any explanation as to why extrapolation is appropriate."  Prior Order at

27

28

21-CV-01380-GPC-DEB

17.  By "extrapolation," the Court was pointing out the leap of inference Plaintiff made in the earlier Complaint: making conclusions about the super and super plus Products based only on testing of regular-sized Products.  By extrapolation, the Court was *not* referring to any relationship between the tested tampons and the actually-purchased tampons.  Instead, the Court directed Plaintiff to demonstrate that all sizes of the Products included in the Complaint were tested to contain lead.  The Court finds now that Plaintiff has successfully demonstrated that all sizes of the Products have been tested to contain lead and has elaborated on the testing with sufficient detail.  *See* SAC ¶¶ 26-38.  As the Court stated in its prior order, extrapolation of test results can be applied broadly where supported by factual allegations.  *Cf. Onaka v. Shisheido Americas Corp*., 2023 WL 2663877, at *5 (S.D.N.Y. March 28, 2023). At the pleading stage, the Court will accept the level of testing that was conducted to apply the test results across all sizes of the subject Products.

The Court also finds that the additional details regarding the laboratory and testing are adequate.  In the SAC, Plaintiff *has* alleged the "testing methodology followed" (Inductively Couple Plasma—Mass Spectrometry), the "specific time of the testing" (the month/year the Products were tested), and "the qualifications of the testers" (the "independent laboratory" has multiple accreditations, including ISO/IEC 17025:2017 and the FDA Laboratory Accreditation for Analysis of Foods (LAAF)).  *Trammel v. KLN Enters., Inc.*, 2024 WL 4194794, at *5 (S.D. Cal. Sept. 12, 2024); SAC ¶¶ 26-34.  This is sufficient at this stage of the proceedings.  Challenging the validity of Plaintiff's scientific testing can happen later with discovery and expert analysis.  *See Bowen v. Energizer Holdings, Inc*., 2024 WL 4352496, at *10 (9th Cir. Oct. 1, 2024) ("a plaintiff typically need not support her allegations with evidence at the pleading stage").  Plaintiff's testing allegations satisfy the demands of Rule 9(b).

  2.  <u>Representations Regarding the Safety of the Products</u>

Plaintiff alleges that Defendant's Representations are likely to mislead reasonable consumers.  Specifically, Plaintiff challenges the following statements: (i) "no harsh ingredients"; (ii) "elemental chlorine-free rayon"; (iii) "pesticide free"; (iv) "made without fragrance"; (v) "gynecologist tested"; and (vi) "BPA free."  SAC ¶ 54.  Plaintiff alleges that these Representations mislead reasonable consumers who are likely to believe that the Products are free from potentially harmful elements and ingredients, including lead. SAC ¶ 55.

Defendant contends that the operative Complaint fails to meet the Rule 9(b) standard because Plaintiff has not alleged *how* the Products expose consumers to lead or how any alleged exposure would be at *harmful* levels.  Mot. at 10.  Relatedly, Defendant argues that "Defendant's representations are not capable of deceiving reasonable consumers because there is no reason for them to believe that there is any risk that they will be exposed to any amounts of lead, much less harmful amounts."  Mot. at 16 (emphasis added); *see also id.* at 17 ("Since the Products (at best) contain only background amounts of lead that consumers are not exposed to, the representations cannot be materially deceptive.").  This argument implicates the element of "materiality" which is a necessary element of a misrepresentation claim.  *See Arroyo v. Chattem, Inc.*, 926 F. Supp. 2d 1070, 1078 (N.D. Cal. 2012) ("materiality and reliance are required for fraud claims based on affirmative misrepresentation").  Defendant asserts that Plaintiff fails to "show that the mere presence of trace amounts of lead that may or may not harm them would be material to a reasonable consumer."  Mot. at 14.

Plaintiff avers that the "ordinary and expected use of the Products exposes consumers to amounts of lead" that exceed the MADL. SAC ¶ 7.  The Complaint asserts that "if the lead to the Products passes through the vaginal epithelium… [it] can be absorbed directly into the bloodstream." SAC ¶ 24.  Plaintiff pleads specifically how lead, through vaginal absorption, can have particularly harmful effects on the body.  *Id.*

21-CV-01380-GPC-DEB

¶¶ 18-25.  While it is a close question, Plaintiff has pled enough to allege that there is a sufficient amount of lead in the Products that presents a *potential* risk of harm. Her allegation is partly based on the fact that the tested levels of lead exceed the MADL. While the Court has previously held that the MADL cannot serve as a proxy for an "unreasonable safety hazard," *see* Prior Order at 23, here, the Proposition 65 MADL "provides guidance as to a reasonable consumer's purchasing decisions." *Sciortino v. Pepsico, Inc*. 108 F. Supp.3d 780, 794 (N.D. Cal. 2015).  And more importantly, by alleging a level of lead that exceeds the MADL, Plaintiff sufficiently alleges that there is more than a *de minimis* quantity of lead which could affect a reasonable consumer's purchasing decision.  The Court does not view the MADL as a proxy for safety but rather as a helpful measure that supports the allegation that there are more than trace amounts of lead. Plaintiff then alleges that these trace amounts of lead present a potential health risk – not because they exceed the MADL but because the lead can be absorbed quickly and into the bloodstream due to the unique nature of these Products.

Furthermore, the question regarding exposure to harmful amounts of lead is the subject of ongoing FDA studies.  In December 2024, the FDA announced that it had completed a literature review of the available evidence on contaminants in tampons and their related health effects and found that none of the studies reviewed address how much, if any, of the contaminants identified are released from the tampon or absorbed through the vagina. ECF No. 29-4 at 2. At the same time, none of the reports indicated that lead was not released or absorbed.  *Id*.  As a result, the FDA announced that an internal bench laboratory study was underway to determine if metals from tampon materials are released or absorbed in the body. *Id*.

The SAC offers well-pled allegations that one possibility (harmful levels of lead) is just as plausible, if not more, than the alternate possibility (safe levels of lead). *Souter v. Edgewell Pers. Care Co.*, 2023 WL 5011747, at *3 (9th Cir. Aug. 7, 2023) ("At the

21-CV-01380-GPC-DEB

1  motion to dismiss stage, it was improper for the district court to select between

2  competing plausible interpretations of an ambiguous term.").  And ultimately,

3  determining whether or not the Representations are actually false or misleading to a

4  reasonable consumer is not for the Court to decide, because this is usually "a question of

5  fact not appropriate for decision on demurrer."  *Williams v. Gerber Prods. Co*., 552 F.3d

6  934, 938 (9th Cir. 2008).

7          Further, materiality is a question of fact "for the jury, unless the misrepresented

8  fact is so obviously unimportant that the jury could not reasonably find that a reasonable

9  [person] would have been influenced by it."  *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652,

10  682 (N.D. Cal. 2021).  Presence of heavy metals in products has been held to be a

11  reasonably material concern.  *See e.g., In re Trader Joe's Co. Dark Chocolate Litig.*, 726

12  F. Supp. 3d 1150, 1172 (S.D. Cal. 2024) (finding plaintiff plausibly alleged economic

13  injuries based on presence of heavy metals in products).  And "even assuming a

14  reasonable consumer would only be misled… if [lead] were at a particularly high level,

15  determining *what* that level would be for a reasonable consumer is not amenable to

16  resolution on a motion to dismiss."  *In re Trader Joe's Co. Dark Chocolate Litig.*, 726 F.

17  Supp. 3d 1150, 1168 (S.D. Cal. 2024) (emphasis added); *see also Rodriguez*, 703 F.

18  Supp. 3d at 1205 ("What constitutes an 'unsafe level' of lead or cadmium is a question of

19  fact not appropriately resolved on a motion to dismiss.").  And even though Plaintiff must

20  still allege more than the mere presence of lead in order to meet the element of

21  materiality, the Court has sufficiently alleged more than trace amounts of lead and that

22  these amounts in the Products created some potential risk of harm.

23          The Court acknowledges that some courts have required Plaintiffs to allege a

24  particular level of lead that is associated with harm to support a misrepresentation claim

25  involving heavy metals in products.  *See, e.g.*, *Krystofiak v. BellRing Brands, Inc*., 737 F.

26  Supp. 3d 782, 801 (N.D. Cal. 2024) ("[t]he complaint does not actually allege the level

27

28

14

associated with these harms [of lead]"); *In re Hain Celestial Heavy Metals Baby Food Litig.*, 2024 WL 5239510, at *12 (E.D.N.Y. Dec. 27, 2024) ("without plausibly alleging what concentration of various heavy metals in baby food products would actually be unsafe… Plaintiffs have failed to allege why the levels of these naturally-occurring heavy metals (other than arsenic)… would be material to the reasonable consumer"); *Hayden v. Bob's Red Mill Nat. Foods, Inc*., 2024 WL 1643696, at *8 (N.D Cal. Apr. 16, 2024) (plaintiffs "fail[] to plausibly allege that the levels of the cadmium *in the Products* render them unhealthy"). These courts have required plaintiffs to plead the actual level of the heavy metal that corresponds to the alleged harm posed by the heavy metal. The Court finds that this would veer too close to a question of fact that would be inappropriate to require at this procedural stage. *See Rodriguez*, 703 F. Supp. 2d at 1205.

Finally, Defendant relies on *Stanley Tumbler Litig.* to support the position that Plaintiffs have failed to make an adequate connection between levels of lead and harm. In *Stanley*, plaintiffs challenged a manufacturer of insulated cups for misrepresenting its products to suggest they had no amount of lead. The plaintiffs' allegations of harms posed by the lead were presented in two paragraphs of the complaint: one paragraph provided general allegations about possible harms from lead exposure, and the other paragraph provided quotes from several "experts" in news articles opining about lead. 764 F. Supp. 3d at 1038. The court found that plaintiffs failed to establish materiality because "the allegations about the possible effects of lead exposure are completely disconnected from the Stanley cups." *Id*. "Without additional factual support that demonstrates a specific and plausible risk of harm from the lead in Stanley cups, the mere presence of lead could not be material to a reasonable consumer." *Id.* at 1039. Here, Plaintiff has pled a specific, plausible risk of lead exposure and attendant harm. SAC ¶ 17 ("The lead contained in the Products may be particularly detrimental to consumer health because the Products are not consumed orally, but instead are intended to be

1  inserted vaginally where the lead can be directly absorbed into the blood stream.").

2  Plaintiff pleads specifically on how lead, through vaginal absorption, can have

3  particularly harmful effects on the body. *Id.* ¶¶ 18-25. Unlike in *Stanley,* Plaintiff has

4  made a plausible, specific connections between the possible effects of lead exposure and

5  the Products themselves. Given the attention that has been given to the safety of tampons

6  since 2024, it is likely that completion of additional studies will provide needed clarity.

7      3. <u>True and Discrete Statements</u>

8      Defendant also attempts to show that the Representations cannot be misleading

9  because they are true and discrete. However, the Representations here contain a myriad

10  of claims which, when read in context, are much more conceptually related to the idea

11  that the Products are free from harmful substances, like lead. Prior Order at 20-21 (citing

12  *In re Trader Joe's Co. Dark Chocolate Litig.*, 726 F. Supp. 3d 1150, 1158, 1166-67 (S.D.

13  Cal. 2024) (defendant's statements about the quality of the products, like "quality

14  ingredients" and "colors derived only from naturally available products," could mislead a

15  reasonable consumer to think that there would be no heavy metals in the products)).

16  Under the reasonable consumer test, a product's labels should be read in context of the

17  entire packaging messaging, and not in abstract isolation. *Andrade-Heymsfield v.*

18  *NextFoods, Inc.*, No. 21-cv-1446-BTM-MSB, 2023 WL 2576770, at *2 (S.D. Cal. Mar.

19  20, 2023) (citing *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 874 (N.D.

20  Cal. 2012). Furthermore, even discrete and true claims may be misleading. *See*

21  *Rodriguez v. Mondelez Glob. LLC*, 703 F. Supp. 3d 1191, 1211-12 (S.D. Cal. 2023)

22  (finding that true and specific claims were plausibly alleged to be misleading, when the

23  context projected a misleading belief that the products did not contain heavy metals); *see*

24  *also Sebastian v. Kimberly-Clark Corp.*, No. 17-cv-442-WQH-JMA, 2017 WL 6497675,

25  at *5 (S.D. Cal. Dec. 18, 2017) (discrete and true statements of "simple formula" and

26

27                                      16

28                                                      21-CV-01380-GPC-DEB

1  "gentle" are not mere puffery and were plausibly alleged misrepresentations in the

2  context of synthetic preservatives within baby wipes).

3  Based on the foregoing reasons, the Court denies Defendant's motion to dismiss

4  Plaintiff's claims based on actionable misrepresentations.

5  4.  Application of the Green Guides

6  Defendant also offers as support for its motion the Federal Trade Commission's

7  ("FTC") Green Guides, which "set forth the Federal Trade Commission's current views

8  about environmental claims."  16 C.F.R. § 260.1(a).  The Green Guides are expressly

9  intended to "help marketers avoid making environmental marketing claims that are unfair

10  or deceptive," and they "apply to claims about the environmental attributes of a product."

11  16 C.F.R. § 260.1.  The Green Guides state that a "free-of or does-not-contain claim is

12  appropriate" and not deceptive if a background-level substance was not "added

13  intentionally" and does not cause material harm.  16 C.F.R. § 260.9.

14  But Plaintiff has not averred any allegations pertaining to environmental

15  marketing.  The FTC's Green Guides are irrelevant here.  As Plaintiff asserts in her

16  Opposition, "[t]he Representations at issue here, however, do not address the

17  environmental attributes of the Products, but 'are voluntary advertising statements' that

18  Defendant makes to 'appeal to consumers and increase sales of the Products.'"

19  Opposition at 16 (citing SAC ¶¶ 57-59).  The Court finds that the Green Guides do not

20  apply to the case because they are not applicable.

21  Here, Plaintiff makes no reference to the environmental qualities of Defendant's

22  products or the Representations. Except for perhaps the "chlorine-free" statement, all the

23  other Representations, individually and collectively, are health-related marketing claims,

24  attesting to the effects on skin, the lack of harsh ingredients, or the approval of

25  gynecologists.  SAC ¶ 3.  Plaintiff does not need to allege that she is *not* pursuing an

26  environmental claim in order to get out of the auspices of the Green Guides.  The burden

27

28

21-CV-01380-GPC-DEB

is on the Defendant, as the movant, to show how the claims are environmental in nature and *do* fall under the purview of the Green Guides. Even though the Green Guides are binding as "codified" law, *see* Cal. Bus. & Prof. Code § 17580.5, they have binding force only where they actually apply.

For two further reasons, the Court refuses to apply the Green Guides. First, Defendant cites no reason as to why one agency's (FTC) guidelines or rules should apply with the same force in a domain regulated by a different federal agency (here, the FDA). While it is a bedrock principle of administrative law that agencies generally must follow their *own* rules and procedures, *see Alcaraz v. INS*, 384 F.3d 1150, 1162 (9th Cir. 2004), there is no corresponding principle that these rules and guidelines should apply with the same force to a device explicitly governed by another agency. *See* 21 C.F.R. §§ 884.5460, 884.5470 (tampons regulated by the FDA as Class II medical devices). Defendant provides no principled reason — or case law — to assume that the rules and guidelines of the FTC would apply here at all.

Secondly, even if the Green Guides were relevant and applicable, Defendant does not explain *how* the Court should apply them here, in its analysis of actionable misrepresentation for a consumer protection lawsuit. Defendant seemingly assumes that if statements meet certain characteristics laid out by the FTC (i.e., involving background-level substances, not intentionally added, not causing material harm), then the statements would be conclusively not misleading. If so, this would override, and make superfluous, the reasonable consumer standard. Defendant suggests as much: "[T]he relevant regulations from the FTC plainly say that consumers <u>are not duped</u> when there are only trace amounts of naturally occurring elements." Reply at 6 (emphasis added). In other words, there would be no need to apply the reasonable consumer standard if there is an automatic conclusion that reasonable consumers are not misled when they fit certain standards under the Green Guides. Defendant implies as much when it states, "Plaintiff

1   does not articulate any reason why her implicit 'free of claim' should be governed by a

2   different standard."  Reply at 7.  The Defendants have it in reverse: there is no reason to

3   depart from applying the well-understood reasonable consumer standard without a clear

4   directive from a higher court.  Particularly, because to do so would ignore the explicit no-

5   preemption clause in the Green Guides.  *See* 260.1(b) ("These guides do not preempt

6   federal, state, or local laws.").

7   **B. Unfair and unlawful prongs for UCL claim**

8       Defendant argues that Plaintiff fails to state a claim under the UCL's unfair or

9   unlawful prongs. The Court agrees as to the "unfair" prong.

10      The UCL prohibits "any [1] unlawful, [2] unfair or [3] fraudulent business act or

11  practice."  Cal. Bus. & Prof. Code § 17200.  The "unfair" prong of the UCL creates a

12  cause of action for a business practice that is unfair even if not proscribed by some other

13  law.  *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1143 (2003).

14  California courts are still divided on which "unfair" standard to apply to consumer suits.

15  *See Nazemi v. Specialized Loan Serv., LLC*, 637 F. Supp. 3d 856, 864 (C.D. Cal. Oct. 31,

16  2022) (citing *Graham v. Bank of America, N.A.,* 226 Cal. App. 4th 594, 612 (2014) ("the

17  appellate courts split regarding the definition of 'unfair 'business practices in consumer

18  action"); *Hodsdon v. Mars, Inc*., 891 F.3d 857, 866 (9th Cir. 2018) (internal quotation

19  marks and citations omitted) (proper test for whether an action violates the unfair prong is

20  "currently in flux among California courts").

21      The Ninth Circuit has identified the following three tests that California courts

22  have considered in addressing the "unfair" prong in a consumer case: "(1) whether the

23  challenged conduct is 'tethered to any underlying constitutional, statutory or regulatory

24  provision, or that it threatens an incipient violation of an antitrust law, or violates the

25  policy or spirit of an antitrust law, '[the "Tethering test"]; (2) whether the practice is

26  'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, '

27

28

21-CV-01380-GPC-DEB

[the "Immoral test"]; or (3) whether the practice's impact on the victim outweighs "the reasons, justifications and motives of the alleged wrongdoer [the "Balancing test"]." *Doe v. CVS Pharm.*, 982 F.3d 1204, 1214-15 (9th Cir. 2020)[1] (internal citations omitted).

In the SAC, Plaintiff alleges that Defendant's conduct is unfair because it intentionally made the Representations to increase sales of the Products with the improper motive to derive financial gain at the expense of truthfulness; the utility of Defendant's conduct in labeling the Products with Representations is outweighed by the harm to consumers; and Defendant's conduct is injurious to competition because it prevents consumers from making an informed choice. *See* SAC ¶¶ 115-28.

In its prior order, the Court found that Plaintiff's allegations on Defendant's "unfair" conduct were conclusory and insufficient to plausibly allege a UCL claim under the "unfair" prong. Prior Order at 23-25. Defendant argues that Plaintiff still fails to state a claim under the unfair prong because Plaintiff's new "allegations are just as conclusory as the ones the Court already rejected" and "amount to legal conclusions." Mot. at 19-20. Defendant states that conclusory allegations based "on information and belief" are not sufficient to satisfy Rule 9(b). *Id*. at 20 (citing *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)).

The Court agrees, and finds these allegations are still too conclusory and insufficient to plausibly allege a UCL claim under the "unfair" prong. Plaintiff's added allegations in the SAC simply restate and recite the "unfair" tests, without adding new

---

[1] The Court applies *Doe* because it is the most recent Ninth Circuit opinion on the unfair prong of the UCL concerning consumers. *See Epperson v. Genl Motors, LLC*, __ F. Supp. 3d __, 2023 WL 8628327, at *6 (S.D. Cal. Dec. 13, 2023) (recognizing different approaches adopted by the California courts of appeal as well as the Ninth Circuit and ultimately applying Doe "[g]iven that it is the most recently published Ninth Circuit opinion on the matter").

facts that would support those allegations. *See Wright v. Charles Schwab & Co. Inc.*, 2020 WL 6822887, at *5 (N.D. Cal. Nov. 20, 2020) ("The plaintiff's recitation of the legal standard and conclusory allegations of a UCL violation do not state an 'unfair' UCL claim."). The Court GRANTS the motion to dismiss the UCL claim premised on the "unfair" prong.

As to the unlawful prong, Plaintiff alleges that Defendant violated Civil Code §§ 1572, 1573, 1709, 1710, 1711 and 1770. *See* SAC ¶¶ 129, 134-138. Plaintiff is entitled to proceed with the UCL under the unlawful prong based upon an alleged violation of the CLRA (Civil Code § 1770) since the affirmative misrepresentation claim moves forward, *see supra*. Accordingly, the Court DENIES the motion as to the alleged CLRA violation.

### C. Equitable claims

Plaintiff seeks disgorgement and injunctive relief under the UCL, SAC ¶¶ 135-43; restitution, disgorgement, and injunctive relief under the FAL, SAC ¶¶ 154-62; and damages and injunctive relief under the CLRA, SAC ¶¶ 182-83. Defendant moves to dismiss the equitable claims under the UCL, FAL, and the CLRA, arguing that Plaintiff has an adequate remedy at law, and therefore dismissal of equitable claims is required by *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020). Mot. at 21-23. Plaintiff opposes, arguing that there is a current intra-circuit split in the Ninth Circuit for how to apply *Sonner* and that numerous courts have allowed plaintiffs to plead both equitable and legal remedies at the pleading stage. *See* Opposition at 21-22. Plaintiff argues that she has pled sufficiently and specifically as to why legal remedies would be inadequate. *Id.* at 22-23.

The Court, in its Prior Order, acknowledged the intra-circuit split on whether *Sonner* applied at the pleading stage and on how "exacting of a standard" *Sonner* imposed on plaintiffs pleading claims for equitable and legal claims. *Jeong v. Nexo Fin. LLC*, 2022 WL 174236, at *27 (N.D. Cal. Jan. 19, 2022) (citing *Byton N. Am. Co. v.*

1  *Breitfeld*, 2020 WL 3802700, at *9 (C.D. Cal. Apr. 28, 2020)).  After surveying the

2  jurisprudence, the Court found that *Sonner* did not necessarily preclude a plaintiff from

3  pleading equitable remedies in the alternative, and that allowing claims to move forward

4  would also be consistent with Federal Rule of Civil Procedure 8, which allows for

5  pleading in the alternative.  Prior Order at 27.

6  However, the Court went on to find that Plaintiff in the FAC pled "no allegations

7  that the legal remedies are inadequate for the restitution or disgorgement that she seeks

8  under the UCL and FAL."  *Id.*  The plaintiff is required to plead inadequate legal

9  remedies "[a]t a minimum."  *Id.* at 28.  Based on this, the Court dismissed those equitable

10  claims with leave to amend for Plaintiff to "expressly allege facts to support a claim that

11  her remedies at law are inadequate."  *Id.*

12  In her SAC, Plaintiff now alleges that her legal remedy is inadequate because (1)

13  disgorgement "serves as a deterrent for future, unlawful conduct," SAC ¶ 136, (2)

14  equitable relief extends beyond recovery of legal damages, since disgorgement permits

15  recovery of interest, *id.* ¶ 137-39, and (3) disgorgement "can be readily measured as a

16  sum certain according to Defendant's financial records while legal damages are generally

17  subject to complex and costly expert valuation," *id.* ¶ 140, and (4) the reach of equitable

18  relief may extend beyond that of legal damages, which under the CLRA are limited by

19  statute to persons who purchase for personal, family, or household purposes, *id.* ¶ 141.

20  Defendant attacks these allegations, arguing that they are insufficient because Plaintiff

21  has not provided any "facts that would tend to show, let alone plausibly establish, that

22  disgorgement is more 'readily measured' than legal damages."  Mot. at 22.

23  The Court does not find that Plaintiff is required to plead facts and allegations to

24  the degree of specificity that Defendant demands.  And at this stage, the Court does not

25  need to evaluate the truthfulness of Plaintiff's allegations, but rather, assuming their truth,

26  must test their legal sufficiency.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009).

27

28

22

21-CV-01380-GPC-DEB

Viewing Plaintiff's allegations in the light most favorable to her, the Court finds that she has sufficiently pled that "'restitution under the CLRA or UCL would be more certain, prompt, or efficient' than the monetary damages she seeks, but may ultimately not attain." *Coleman v. Mondelez Int'l Inc.*, 554 F. Supp. 3d 1055, 1065 (C.D. Cal. 2021) (quoting *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1008-09 (N.D. Cal. 2020)).

Furthermore, even though Plaintiff's injury is by nature economic and the factual predicate and theory underlying the CLRA, UCL, and FAL claims "appear to be essentially the same," *Shuman v. SquareTrade Inc.*, 2021 WL 5113182, at *11 (N.D. Cal. Nov. 3, 2021), courts in this circuit have allowed plaintiffs to plead both in the same or similar circumstances. *See, e.g.*, *Coleman*, 554 F. Supp. 3d at 1065; *Jeong v. Nexo Fin. LLC*, 2022 WL 174236, at *27 (N.D. Cal. Jan. 19, 2022); *Krause-Pettai v. Unilever United States, Inc.*, 2021 WL 1597931, at *4 (S.D. Cal. Apr. 23, 2021).

*Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1310 (9th Cir. 2022) does not foreclose the Court's conclusion that Plaintiff can plead equitable relief under the UCL and FAL. *Guzman* was concerned with the question of a district court's equitable jurisdiction to hear a plaintiff's UCL claim if the plaintiff had a time-barred CLRA claim. The Ninth Circuit concluded that the plaintiff's "failure to have timely pursued his CLRA claim cannot confer equitable jurisdiction on a federal court to entertain his UCL claim." *Guzman*, 49 F.4th at 1312. The holding in *Guzman* has no bearing on whether Plaintiff, if having sufficiently pled inadequate legal remedy, can bring her equitable claims alongside her legal ones. It is still an open question in this circuit as to how *Sonner* applies at the pleading stage — and with how much force — to a plaintiff who pleads that legal remedy is inadequate and pleads equitable relief in the alternative. Furthermore, as Plaintiff notes, *Guzman* addressed a motion of summary judgment, and Plaintiff is only seeking to "*plead* equitable and legal claims in the alternative, not to prove an entitlement to both types of relief as a matter of law." Opposition at 23. *Guzman* does not require

21-CV-01380-GPC-DEB

that this Court dismiss Plaintiff's equitable claims at this stage. *See Carroll v. Myriad Genetics, Inc.*, 2022 WL 16860013, at *6 (N.D. Cal. Nov. 9, 2022).

As for injunctive relief, the Court previously found that Plaintiff had sufficiently pled that legal remedy was inadequate. *See* Prior Order at 29; FAC ¶ 109. No changes have been made in the SAC in this regard. *See* SAC ¶¶ 89-93 and FAC ¶¶ 108-112. As such, the Court finds, as it did before, that Plaintiff has satisfied the pleading standard for injunctive relief.

The Court therefore DENIES Defendant's Motion to dismiss Plaintiff's equitable claims.

## CONCLUSION

Based on the reasoning above, the Court GRANTS the Motion as to the UCL claim premised on the unfair prong with prejudice and DENIES the Motion as to the rest of the claims.

**IT IS SO ORDERED.**

Dated:  August 13, 2025

Hon. Gonzalo P. Curiel
United States District Judge

24

21-CV-01380-GPC-DEB